Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/02/2016 09:10 AM CST

In re Interest of LeVanta S., a child
under 18 years of age.
State of Nebraska, appellee and cross-appellee,
v. Patricia B., appellant, and Calvin S.,
appellee and cross-appellant.

In re Interest of LeRonn S., a child
under 18 years of age.
State of Nebraska, appellee and cross-appellee,
v. Patricia B., appellant, and Calvin S.,
appellee and cross-appellant.

___ N.W.2d ___

Filed December 2, 2016.    Nos. S-15-909, S-15-910.

1. **Judgments: Jurisdiction.** A jurisdictional issue that does not involve a factual dispute presents a question of law.
2. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.
3. **Courts: Juvenile Courts: Jurisdiction: Appeal and Error.** Appellate courts in Nebraska have jurisdiction to hear appeals from final orders issued by juvenile courts in the same manner as appeals from the district courts.
4. **Final Orders: Appeal and Error.** An order that affects a substantial right made in a special proceeding is a final order.
5. **Juvenile Courts: Appeal and Error.** Juvenile court proceedings are special proceedings for purposes of appeal.
6. **Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.

7. **Juvenile Courts: Parental Rights: Parent and Child: Time: Final Orders: Appeal and Error.** When determining whether a juvenile court order affects a substantial right of a parent to raise his or her child, an appellate court considers the object of the order as well as the length of time over which the parent's relationship with the child may reasonably be expected to be disturbed.

8. **Juvenile Courts: Minors.** Nebraska law requires the creation of permanency plans for every juvenile placed in out-of-home care and requires juvenile courts to hold a hearing on the plan.

9. **Juvenile Courts: Judgments: Parental Rights: Adoption: Guardians and Conservators.** The juvenile court's order on a permanency plan must include whether the objective is for the juvenile to be returned to the parent, referred for a termination-of-parental-rights filing, placed for adoption, or referred for a guardianship.

10. **Parental Rights.** Nebraska law requires reasonable efforts to be made to reunify families after a juvenile is placed in out-of-home care.

11. **Parental Rights: Adoption: Guardians and Conservators.** Reasonable efforts toward reunification may be made concurrently with a plan for adoption or guardianship, but the objective of family preservation and reunification must take priority over the other objectives.

12. **Guardians and Conservators: Minors.** The first requirement for establishment of a permanent guardianship is that the juvenile be adjudicated under Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2015).

13. **Parental Rights.** An adjudication of a juvenile under Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2015) can be a basis for termination of parental rights if subsequent reasonable efforts to preserve and reunify the family have failed. But an adjudication under § 43-247(3)(c) is not a ground for termination under Neb. Rev. Stat. § 43-292 (Reissue 2016).

14. **Guardians and Conservators: Minors.** Pursuant to Nebraska's permanent juvenile guardianship statute, Neb. Rev. Stat. § 43-1312.01 (Reissue 2016), an adjudication under Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2015) is a requirement for establishing a guardianship.

15. **Juvenile Courts: Jurisdiction: Mental Health.** The only basis for the court's jurisdiction in a case under Neb. Rev. Stat. § 43-247(3)(c) (Supp. 2015) is that the juvenile is mentally ill and dangerous.

16. **Parental Rights: Due Process.** The absence of an opportunity for parents to respond to allegations about their fitness to raise their children implicates their due process rights.

17. **Due Process.** The concept of due process embodies the notion of fundamental fairness and defies precise definition. But the central meaning of procedural due process is clear: Parties whose rights are to be affected are entitled to be heard.

18. **Parental Rights: Due Process: Appeal and Error.** The absence of a formal opportunity to be heard distinguishes a case under Neb. Rev. Stat. § 43-247(3)(c) (Supp. 2015) from a case under § 43-247(3)(a) in an appellate court's analysis of whether the change in permanency objective was a final order.

19. **Statutes: Appeal and Error.** Appellate courts will adhere to the plain meaning of a statute absent a statutory indication to the contrary.

20. **Guardians and Conservators: Minors.** Because Neb. Rev. Stat. § 43-1312.01(1)(a) (Reissue 2016) requires that for the establishment of a guardianship, the child is a juvenile who has been adjudged to be under Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2015), a guardianship may not be established without such adjudication.

Appeals from the Separate Juvenile Court of Douglas County: Elizabeth Crnkovich, Judge. Reversed and remanded for further proceedings.

Regina T. Makaitis for appellant.

Karen C. Hicks, of Hicks Law, P.C., L.L.O., for appellee Calvin S.

Donald W. Kleine, Douglas County Attorney, and Jennifer C. Clark for appellee State of Nebraska.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Wright, J.

## I. NATURE OF CASE

In 2013, the separate juvenile court of Douglas County adjudicated twin brothers LeVanta S. and LeRonn S. under Neb. Rev. Stat. § 43-247(3)(c) (Reissue 2008) as "mentally ill and dangerous." Both brothers were eventually placed in out-of-home care. In September 2015, the juvenile court entered an order changing the brothers' permanency objective from family reunification to guardianship. The mother (appellant, Patricia B.) and the father (cross-appellant, Calvin S.) separately appeal from this order in each brother's case. The appeals from the two cases have been consolidated.

## II. FACTS

### 1. Family Background

At a very young age, LeVanta and LeRonn were adopted by Patricia and Calvin, their parents. The twin brothers have developmental disabilities due to fetal alcohol syndrome. Both have IQ's in the "Extremely Low Range" and meet the criteria for "Mild Mental Retardation." They were 15 years old when their cases began in January 2013, and are now 18 years old.

The parents were separated before January 2013 and have since divorced. After the parents' separation, one brother lived with each parent. From the time the children were 5 years old, the parents have sought professional help in dealing with the brothers' behaviors.

### 2. Petition and First Hearing

In January 2013, the brothers were brought before the juvenile court for criminal delinquency charges of trespass and truancy. These charges were dropped when it was determined that they were not mentally competent to be tried. The county attorney then filed petitions alleging the brothers were "mentally ill and dangerous" within § 43-247(3)(c). The State moved for temporary custody with the Department of Health and Human Services (DHHS), with placement to include the parental homes.

### 3. Adjudication and Disposition

An adjudication hearing was held April 3, 2013, and the brothers and the mother and father were present. Each brother had appointed counsel, but the parents were not represented by counsel. The family permanency specialist and the mother both testified. Examples of the brothers' poor judgment, fighting, anger problems, and other violent behavior were offered. Testimony was also offered that LeRonn would at times refuse to take his medications. The court found by clear and convincing evidence that the brothers were within the definition of

§ 43-247(3)(c). Temporary custody was placed with DHHS. The parents did not appeal the adjudication.

A disposition hearing was held May 21, 2013, but the parents were not present and were not represented by counsel. At the beginning of the hearing, there was some discussion whether the parents had been informed of the hearing date and time. The court ordered that the brothers stay at home with their parents, but that applications for out-of-home placements should be made. The court ordered in-home developmental disability services to be provided, with both parents to participate. All visits by the parents were to be supervised, and they were to participate in therapy and complete a psychiatric evaluation.

The court found that reasonable efforts—including evaluations, family support, and case management—had been made to return each brother to the parents' custody, but that it was in their best interests to remain in the temporary custody of DHHS.

#### 4. Additional Hearings

The juvenile court continued to have additional review hearings. The family permanency objective was stated as "family preservation" or "reunification," but applications for out-of-home placements were to be made.

In July 2013, LeRonn threw a mailbox through the front window of his father's house. He was moved from his father's house to an "extended family home" for individuals with developmental disabilities. Later that month, the court appointed counsel to represent the parents.

In June 2014, when LeVanta's behavior regressed, the court ordered that he be placed in out-of-home care. In July, he was placed in a group home. The court sustained an ex parte motion requiring supervision of all visits between the parents and the boys, because the mother reportedly took the brothers on a visit together, in violation of a court order, and the father and LeRonn had gotten into an argument.

At a December 18, 2014, review hearing, the judge questioned whether an adjudication under § 43-247(3)(c) was the right procedure in this case or whether subsection (3)(a) was more appropriate. The court said:

> Without a doubt, [these boys] have their own set of challenges. There is no question about that. That does not make them delinquent, and it does not make them mentally ill and dangerous.
>
> They have a mother and a father who are good, kind people . . . who love these boys dearly. But I'm — I find at every hearing that what is at the heart of these challenges is an inability to parent these boys based on their unique needs.

No new petition was filed alleging the parents' "inability to parent these boys based on their unique needs."

Upon the recommendation of DHHS, the court ordered that LeVanta be placed in the same foster home as LeRonn so they could work on building their relationship and interacting appropriately without fighting. The orders following the hearing stated that the permanency objective was "reunification," with temporary custody remaining with DHHS. The parents were ordered to "participate with the family support worker until successful discharge" in order to learn to better teach the brothers healthy coping skills and ways to interact with each other.

At another review hearing on March 19, 2015, it was reported that the brothers were doing well in their placements and in school. The court ordered the parents to participate in family support services to work on parenting the brothers and to participate in individual and family therapy.

Because a finding of a lack of reasonable efforts "can impact families by shutting off funding for services" and because many of the previous problems had been corrected, the court declined to find a lack of reasonable efforts on the part of DHHS. The court found reasonable efforts had been made by DHHS.

## 5. CHANGE OF PERMANENCY OBJECTIVE

At the review hearing on September 10, 2015, DHHS recommended continuing to work on the permanency plan of reunification, while making concurrent permanency plans of a guardianship. The parents opposed the recommendation of a guardianship, and the mother's request for a continuance and an evidentiary hearing on the issue was denied. The attorneys for the brothers requested the court to close the case based on the adjudication under § 43-247(3)(c), because the brothers were doing very well.

The court denied the requests to close the case and adopted the permanency objective of guardianship, stating:

So indeed, young man and your brother, too, you are doing superbly. I could not be more proud. And I wish that I could grant your request today. But it is not because of your behavior that I cannot.

At the same time, [the parents] — I think I've said this before — are loving people, are good people, are kind people, and they love their sons and their sons love them. But it has been clear at every hearing that they are unable to place themselves in a position of parenting these children. And that was clear even when early on the specific services to the kids were confusing.

I'm not letting [DHHS] off the hook. I disagree with — that someone has a mindset that the only solution is a guardianship. I believe the evidence supports that the possibility of reunification, given the almost three years that we have been before the Court, is not likely to happen in the minority of these children before their 19th birthday. And it is those combination of things in the evidence that leads me to conclude that we — a guardianship is the most appropriate permanency plan for these two young men. But I want to know for sure that they will stay in their present placement.

That is the order of the Court. We are adjourned. Thank you.

The written order stated that the "the primary permanency objective is a guardianship." It did not state that this permanency objective was concurrent with an objective of reunification.

The parents were ordered to continue in individual and family therapy. For the first time, the father was ordered to participate in urinalysis testing and to complete a chemical dependency evaluation. The mother was ordered to allow the family permanency specialist to conduct drop-in, walk-through inspections of her home in order to have visits there.

Both parents separately appealed from these orders.

## III. ASSIGNMENTS OF ERROR

The mother and father raise the following issues: whether the juvenile court erred by issuing an order changing the permanency objective to guardianship when the juveniles had been adjudicated only under § 43-247(3)(c) and whether the juvenile court violated the parents' constitutional right to due process. The mother claims the court erred in denying her request for an evidentiary hearing on the issue of changing the permanency objective to guardianship.

## IV. STANDARD OF REVIEW

[1,2] A jurisdictional issue that does not involve a factual dispute presents a question of law.[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.[2]

## V. ANALYSIS

This case presents these issues: whether the order of the juvenile court changing the permanency objective for the

---

[1] *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015).

[2] *Id.*

brothers was a final, appealable order; whether the juvenile court exceeded its authority by changing the permanency objective to guardianship when there has been no adjudication under § 43-247(3)(a) (Supp. 2015). The parents argue that the statute for juvenile guardianships requires an adjudication under subsection (3)(a) before a guardianship may be established. The State argues that the juvenile court has broad authority to adopt permanency plans for juveniles in both § 43-247(3)(a) and (c) cases under Neb. Rev. Stat. § 43-285 (Supp. 2015).

The last issue is whether the juvenile court's order violated the parents' due process rights. The parents argue that their rights were violated by the adoption of the permanency plan of guardianship because the only basis for the court's jurisdiction was an adjudication that the brothers were "mentally ill and dangerous" under § 43-247(3)(c). In a subsection (3)(c) case, no allegation is made regarding the fitness of a parent to raise his or her child, nor does a parent have the opportunity to respond to the petition. The parents also assert that their due process rights were violated because they were not advised of their rights or given notice of the possible consequences of future dispositional orders, such as the establishment of a guardianship. The State claims that because the parents were present in the courtroom when the juveniles were advised of their rights, the parents were thereby also advised of their rights.

## 1. Jurisdiction

As a preliminary matter, we must determine whether we have jurisdiction over this appeal. The State has asserted that the orders from which the mother and father appeal are not final, appealable orders.

[3-6] Appellate courts in Nebraska have jurisdiction to hear appeals from final orders issued by juvenile courts in the same manner as appeals from the district courts.[3] An order that "affect[s] a substantial right made in a special

---

[3] Neb. Rev. Stat. § 43-2,106.01 (Reissue 2016).

proceeding" is a final order.[4] Juvenile court proceedings are "special proceedings" for purposes of appeal.[5] The question is whether the order affects a substantial right.[6] A substantial right is an essential legal right, not a mere technical right.[7] We have explained:

> Numerous factors determine whether an order affects a substantial right for purposes of interlocutory appeal. Broadly, *these factors relate to the importance of the right and the importance of the effect on the right by the order at issue*. It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial. Whether the effect of an order is substantial depends on "'whether it affects with finality the rights of the parties in the subject matter.'" It also depends on whether the right could otherwise effectively be vindicated. An order affects a substantial right when the right would be significantly undermined or irrevocably lost by postponing appellate review. Stated another way, an order affects a substantial right if it "'affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which he or she is appealing.'"[8]

[7] When determining whether a juvenile court order affects a substantial right of a parent to raise his or her child, we consider the object of the order as well as the length of time over which the parent's relationship with the child may reasonably be expected to be disturbed.[9]

---

[4] Neb. Rev. Stat. § 25-1902 (Reissue 2016).

[5] *In re Interest of Octavio B. et al., supra* note 1, 290 Neb. at 596, 861 N.W.2d at 422.

[6] *Id.*

[7] *Id.*

[8] *Deines v. Essex Corp.*, 293 Neb. 577, 581, 879 N.W.2d 30, 33-34 (2016) (emphasis supplied).

[9] See *In re Interest of Octavio B. et al., supra* note 1.

## (a) Permanency Plans

[8-11] Nebraska law requires the creation of permanency plans for every juvenile placed in out-of-home care and requires juvenile courts to hold a hearing on the plan.[10] The court's order on a permanency plan must include whether the objective is for the juvenile to be returned to the parent, referred for a termination-of-parental-rights filing, placed for adoption, or referred for a guardianship.[11] Nebraska law also requires "reasonable efforts" to be made to reunify families after a juvenile is placed in out-of-home care. Reasonable efforts toward reunification may be made concurrently with a plan for adoption or guardianship, but the objective of family preservation and reunification must take priority over the other objectives.[12]

[12] If the juvenile's permanency objective does not include reunification or adoption, a permanent guardianship may be established in certain circumstances.[13] The first requirement for establishment of a permanent guardianship is that the juvenile be adjudicated under § 43-247(3)(a).[14] Guardianship gives the guardian all of the powers, rights, and duties that a child's parents would have, but does not terminate a parent's rights.[15]

---

[10] Neb. Rev. Stat. §§ 43-1311 (Reissue 2016) and 43-1312 (Cum. Supp. 2014). See, also, generally, Adoption and Safe Families Act of 1997, Pub. L. No. 105-89, 111 Stat. 2115 (codified at 42 U.S.C. §§ 673b, 678, 679b (2012), requiring states to adopt permanency plans in their juvenile laws in order to maintain federal funding); *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002) (discussing permanency plans and reasonable efforts for family reunification); *In re Interest of Sarah K.*, 258 Neb. 52, 601 N.W.2d 780 (1999) (discussing adoption of permanency plans in Nebraska law).

[11] § 43-1312(3).

[12] Neb. Rev. Stat. § 43-283.01(6) (Reissue 2016).

[13] Neb. Rev. Stat. § 43-1312.01 (Reissue 2016).

[14] § 43-1312.01(1)(a).

[15] § 43-1312.01(2) and (7).

In the cases *In re Interest of Sarah K.*,[16] *In re Interest of Tayla R.*,[17] *In re Interest of Diana M. et al.*,[18] and *In re Interest of Octavio B. et al.*,[19] this court and the Nebraska Court of Appeals have considered whether an order in a juvenile case, which continues prior dispositional orders but changes the permanency objective from family reunification to another objective, is a final, appealable order. In these cases, the permanency objectives were changed from family reunification to adoption, guardianship, or foster care transitioning to independent living. Read together, these cases provide that such an order is not a final, appealable order unless the parent's ability to achieve rehabilitation and family reunification has been clearly eliminated. However, in all of these cases, the juveniles had been adjudicated under § 43-247(3)(a). As we will discuss, the order in this case affects a substantial right of the parents in a way that a similar order in a subsection (3)(a) case would not.

### (b) § 43-247(3)(c): "mentally ill and dangerous"

In the cases at bar, the brothers were both adjudicated under § 43-247(3)(c) as "mentally ill and dangerous." The nature of the adjudication bringing the brothers under the jurisdiction of the juvenile court is important to understanding whether the order affected a substantial right of the parents. The order implicates the parents' due process rights.

Subsection (3)(c) of § 43-247 gives the juvenile court jurisdiction over any juvenile "who is mentally ill and dangerous as defined in section 71-908." Neb. Rev. Stat. § 71-908 (Reissue 2009) is a part of the Nebraska Mental Health Commitment Act and provides:

---

[16] *In re Interest of Sarah K., supra* note 10.

[17] *In re Interest of Tayla R.*, 17 Neb. App. 595, 767 N.W.2d 127 (2009).

[18] *In re Interest of Diana M. et al.*, 20 Neb. App. 472, 825 N.W.2d 811 (2013).

[19] *In re Interest of Octavio B. et al., supra* note 1.

Mentally ill and dangerous person means a person who is mentally ill or substance dependent and because of such mental illness or substance dependence presents:

(1) A substantial risk of serious harm to another person or persons within the near future as manifested by evidence of recent violent acts or threats of violence or by placing others in reasonable fear of such harm; or

(2) A substantial risk of serious harm to himself or herself within the near future as manifested by evidence of recent attempts at, or threats of, suicide or serious bodily harm or evidence of inability to provide for his or her basic human needs, including food, clothing, shelter, essential medical care, or personal safety.

Subsection (3)(c) is substantially different from subsection (3)(a), which, generally speaking, applies to situations in which a juvenile lacks proper parental care, support, or supervision.[20] Because a subsection (3)(a) adjudication addresses the issue of parental fitness, significant legal consequences can flow from such an adjudication and greater procedural protections are required.

[13,14] In a case under § 43-247(3)(a), a parent has the opportunity to deny a petition's allegations.[21] This is a key distinction from a subsection (3)(c) petition, in which the juvenile responds but to which parents have no statutory right to respond.[22] Moreover, an adjudication of a juvenile under

---

[20] § 43-247(3)(a).

[21] See Neb. Rev. Stat. § 43-279.01 (Reissue 2016). See, also, *In re Interest of Trenton W. et al.*, 22 Neb. App. 976, 983, 865 N.W.2d 804, 811 (2015) ("factual allegations of a petition seeking to adjudicate a child must give a parent notice of the bases for seeking to prove that the child is within the meaning of § 43-247(3)(a)").

[22] See § 43-279.01 (providing parents with right to respond to allegations in § 43-247(3)(a) petition) and Neb. Rev. Stat. § 43-279 (Reissue 2008) (providing juveniles with right to respond to allegations under § 43-247(1), (2), (3)(b), or (4)).

subsection (3)(a) can be a basis for termination of parental rights if subsequent reasonable efforts to preserve and reunify the family have failed.[23] But an adjudication under subsection (3)(c) is not a ground for termination under § 43-292. Pursuant to Nebraska's permanent juvenile guardianship statute, § 43-1312.01, an adjudication under subsection (3)(a) is a requirement for establishing a guardianship.

Under subsection (3)(a) of § 43-247, a parent has both the opportunity and the incentive to contest and appeal an adjudication, which the parent does not have when the child is adjudicated under subsection (3)(c). And subsequent review orders in a subsection (3)(a) case do not typically affect a substantial right for purposes of appeal, because the parent has been given the full and fair opportunity to respond to the allegations at the adjudication stage. The parent has been given notice of the possible consequences of future dispositional orders and any applicable rights. Furthermore, as compared to subsection (3)(c), such changes in permanency objectives are within the power of the court under a subsection (3)(a) adjudication. Thus, the order changing the permanency plan in a subsection (3)(a) case does not necessarily affect a substantial right of the parent when it continues prior orders directed at family preservation and reunification or remedying the reasons that led to the adjudication.

[15,16] But in an adjudication under § 43-247(3)(c), no determination is made of a parent's ability to care for his or her child. Nor does the parent have the opportunity to respond to the allegations in the subsection (3)(c) petition, because the allegations relate only to the juvenile and not to the parent. The only basis for the court's jurisdiction in a case under subsection (3)(c) is that the juvenile is "mentally ill and dangerous." The absence of an opportunity for parents to respond to allegations about their fitness to raise their children implicates their due process rights.

---

[23] Neb. Rev. Stat. § 43-292(6) (Reissue 2016).

[17] The constitutional right to due process protects the parent-child relationship.[24] The concept of due process embodies the notion of fundamental fairness and defies precise definition.[25] But "'the central meaning of procedural due process [is] clear: "Parties whose rights are to be affected are entitled to be heard . . . ."'"[26] Thus we have said:

> When a person has a right to be heard, procedural due process includes notice to the person whose right is affected by a proceeding, that is, timely notice reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.[27]

Because this was a case under § 43-247(3)(c), based upon the adjudication of the juveniles as "mentally ill and dangerous," there has been no adjudication under subsection (3)(a) of the parents' ability or fitness to raise their children.

[18] The absence of a formal opportunity to be heard distinguishes this case from cases under § 43-247(3)(a) in our analysis of whether the change in permanency objective was a final order. It is against this backdrop that the juvenile court's orders changing the brothers' permanency objective to guardianship uniquely affects the parents' substantial right to raise their children.

---

[24] *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992); *In re Interest of Davonest D. et al.*, 19 Neb. App. 543, 809 N.W.2d 819 (2012).

[25] *In re Interest of L.V., supra* note 24.

[26] *Id.* at 413, 482 N.W.2d at 257, quoting *Fuentes v. Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972).

[27] *In re Interest of L.V., supra* note 24, 240 Neb. at 413-14, 482 N.W.2d at 257.

We conclude the juvenile court's order affected a substantial right of the parents, because they were afforded no formal process to determine their ability to raise their children. Because the order affected a substantial right, it is a final, appealable order.

## 2. CHANGE OF PERMANENCY PLAN
### TO GUARDIANSHIP

Having concluded that we have jurisdiction, we turn to the merits of this appeal. The parents appeal the order issued September 14, 2015, which changed the permanency objectives for both brothers from family reunification to guardianship.

The parents argue that Nebraska's statute governing permanent guardianships for juveniles, § 43-1312.01, requires an adjudication under subsection (3)(a) of § 43-247 as a prerequisite for the establishment of a guardianship. The State argues that § 43-285 gives the court the power to order DHHS to prepare a permanency plan for juveniles that have been adjudicated under either subsection (3)(a) or subsection (3)(c) of § 43-247.

In 2014, the Nebraska Legislature passed L.B. 908 to "provide for the appointment of a guardian for a child who is adjudicated under subdivision (3)(a) of 43-247," among other reasons.[28] The guardianship provision of L.B. 908 was codified at § 43-1312.01. The statute provides that if "the permanency plan for a child . . . does not recommend return of the child to his or her parent or that the child be placed for adoption, the juvenile court may place the child in a guardianship" if certain requirements are met.[29] The first requirement is that "[t]he child is a juvenile who has been adjudged to be under subdivision (3)(a) of section 43-247."[30]

---

[28] Committee Statement, L.B. 908, Judiciary Committee, 103d Leg., 2d Sess. (Jan. 29, 2014).

[29] § 43-1312.01(1).

[30] § 43-1312.01(1)(a).

[19] The parents correctly assert that the requirements listed in § 43-1312.01(1) form a conjunctive list. Elements (a) through (d) in subsection (1) are connected with the word "and." When connecting a list of elements, "and" connotes a conjunctive list while "or" connotes a disjunctive list.[31] We have said that the plain meaning of the words "and" and "or," when used to connect elements in a list, may be disregarded when such a reading would lead to an absurd result in conflict with clear legislative intent.[32] And we will adhere to the plain meaning of a statute absent a statutory indication to the contrary.[33]

[20] Moreover, the content of the statute supports the conclusion that the elements form a conjunctive list, each of which must be met before a guardianship may be established. For example, subsection (1)(d)(i) of § 43-1312.01 requires that the guardian be "suitable and able to provide a safe and permanent home for the child." It would be unreasonable to read this as a disjunctive list, so that this requirement need

---

[31] See, *Grammer v. Lucking*, 292 Neb. 475, 479, 873 N.W.2d 387, 390 (2016) ("[t]he word 'or,' when used properly, is disjunctive"); *Zach v. Eacker*, 271 Neb. 868, 872, 716 N.W.2d 437, 441 (2006) (referring to "the conjunctive connector 'and'"); *DG Enterprises, LLC-Will Tax, LLC v. Cornelius*, 2015 IL 118975, ¶ 31, 43 N.E.3d 1014, 1021, 398 Ill. Dec. 104, 112 (2015) ("generally the use of a conjunctive such as 'and' indicates that the legislature intended that *all* of the listed requirements be met"); *Sargent v. Shaffer*, 467 S.W.3d 198, 207 (Ky. 2015) ("courts apply the conjunction, 'and,' as written by the legislature unless that construction would clearly thwart the intent of the legislature or produce an absurd result"); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 116-25 (2012) (discussing conjunctive and disjunctive lists); 1A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 21:14 (7th ed. 2009) (discussing "[c]onjunctive and disjunctive words").

[32] See, *State v. Wester*, 269 Neb. 295, 691 N.W.2d 536 (2005); *Ledwith v. Bankers Life Ins. Co.*, 156 Neb. 107, 54 N.W.2d 409 (1952); *Carlsen v. State*, 127 Neb. 11, 254 N.W. 744 (1934); *State, ex rel. Spillman, v. Brictson Mfg. Co.*, 114 Neb. 341, 207 N.W. 664 (1926).

[33] See, e.g., *Shurigar v. Nebraska State Patrol*, 293 Neb. 606, 879 N.W.2d 25 (2016).

not be met if any of the other requirements in subsections (1)(a) through (d) were met. Both the plain language of the statute and common sense require us to read § 43-1312.01(1) as a conjunctive list. Because § 43-1312.01(1)(a) requires that for the establishment of a guardianship, "[t]he child is a juvenile who has been adjudged to be under subdivision (3)(a) of section 43-247," a guardianship may not be established without such adjudication.

The State argues the court had the authority to change the permanency objective to guardianship under § 43-285. Subsection (2)(a) of that statute states in part:

> Following an adjudication hearing at which a juvenile is adjudged to be under subdivision (3)(a) or (c) of section 43-247, the court may order the department to prepare and file with the court a proposed plan for the care, placement, services, and *permanency* which are to be provided to such juvenile and his or her family.[34]

This statute gives a juvenile court the authority to order DHHS to prepare a plan for the care of juveniles in its custody, including a permanency objective and the authority to adopt such an objective. The question is whether the juvenile court had the authority to adopt a permanency objective of guardianship in this case under § 43-247(3)(c) without a subsection (3)(a) adjudication. We hold that it did not. If a guardianship may not be lawfully established without a subsection (3)(a) adjudication, then neither may a permanency plan of guardianship be adopted without such adjudication. The juvenile court exceeded its authority in its order of September 14, 2015, by adopting the permanency plan of guardianship.

## 3. DUE PROCESS

The parents also assert that the juvenile court's order changing the permanency objective to guardianship violated their constitutional right to due process. They argue that because

---

[34] § 43-285(2)(a) (emphasis supplied).

the case was filed as a case under § 43-247(3)(c), in which no allegations were made against the parents, and because they were never advised of their rights or the possible consequences of the disposition orders of the court, including that a guardianship may be established, their constitutional right to due process was violated. The mother also asserts that the juvenile court's denial of her request for an evidentiary hearing on the issue of adopting the permanency plan of guardianship violated her due process rights. We have discussed the parents' due process rights in the context of our final order analysis in this case. Because we reverse the juvenile court's order on the basis that a permanency plan of guardianship may not be adopted without a subsection (3)(a) adjudication, we need not reach this assignment of error on the merits.

## VI. CONCLUSION

The juvenile court's order adopting the permanency objective of guardianship was a final, appealable order, because it affected a substantial right of the parents in a special proceeding. The parents' substantial right to raise their children was affected, because no determinations were made about their fitness and ability to care for their children in this case under § 43-247(3)(c). They were not given the opportunity to formally respond to the court's opinion that "they are unable to place themselves in a position of parenting these children." The juvenile court exceeded its authority in adopting a permanency objective of guardianship in a case in which there has been no adjudication under § 43-247(3)(a). We reverse the order of September 14, 2015, and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.