IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


IN RE INTEREST OF ARABELLA G. & PHOENIX H.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF ARABELLA G. AND PHOENIX H.,
CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

HEATHER G., APPELLANT.


Filed February 11, 2020.    No. A-19-586.


Appeal from the Separate Juvenile Court of Douglas County: VERNON DANIELS, Judge. Affirmed.

Michaela Skogerboe, of Harris & Associates, P.C., L.L.O., for appellant.

Mark Hanna, Deputy Douglas County Attorney, for appellee.


PIRTLE, RIEDMANN, and BISHOP, Judges.

PIRTLE, Judge.

### INTRODUCTION

This is an appeal from an order of the Separate Juvenile Court of Douglas County terminating the mother's parental rights pursuant to Neb. Rev. Stat. § 43-292(2) (Reissue 2016). We affirm the order of the juvenile court.

### BACKGROUND

Appellant, Heather G., is the mother of Arabella G. and Phoenix H. Heather's children were placed in the custody of the Department of Health and Human Services (DHHS) on December 9, 2016. A petition alleging the children lacked proper parental care within the meaning

of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) due to the faults or habits of Heather was filed December 12, 2016. Adjudication on the petition was held on June 23, 2017, and the juvenile court found the allegations to be true by a preponderance of the evidence. Heather appealed the adjudication while her children remained in foster care.

In a memorandum opinion filed on March 6, 2018, this court reversed the judgment of the juvenile court and remanded the cause with directions to dismiss the petition. See *In re Interest of Arabella G. & Phoenix H.*, No. A-17-787, 2018 WL 1168714 (Neb. App. Mar. 6, 2018) (selected for posting to court website). On May 17, the petition was dismissed. On May 18, a third supplemental petition was filed, again alleging that Arabella and Phoenix came within the meaning of § 43-247(3)(a) and that they lacked proper parental care by reason of the faults or habits of their mother, Heather, which included allegations of drug use; the failure to provide proper parental care, support, and supervision; and the failure to provide safe, stable, and independent housing. The third supplemental petition was adjudicated on August 6 and found to be true by a preponderance of the evidence. Disposition was set for October 23, and Heather was ordered to complete a chemical dependency evaluation in the meantime.

On September 5, 2018, prior to disposition on the third supplemental petition, the Douglas County Attorney filed a motion to terminate Heather's parental rights alleging her children came within the meaning of § 43-292(2) and (7) because Heather has substantially and continuously or repeatedly neglected and refused to give her children necessary parental care and protection and her children had been out of her care for at least 15 out of the most recent 22 months. The county attorney also alleged that terminating Heather's parental rights was in the best interests of Arabella and Phoenix. The termination trial was held over three dates in November 2018 and February 2019, and the juvenile court concluded on May 31 that the State had proved its allegations by clear and convincing evidence.

During the termination trial the State presented testimony by various case managers and visitation and family support workers who had offered Heather services which included drug testing and navigation to community resources and services designed to land lawful employment and stable housing. Between December 2016, when the children first went into foster care, and February 2017, Heather was offered 27 urinalysis tests. No samples were ever collected. Heather was discharged from testing for lack of participation in February.

Between January and April 2017, Heather was offered services designed to secure stable housing and employment and to enhance her parenting skills. Communication with Heather was inconsistent and she often failed to attend face-to-face meetings with the support workers. Heather was unsuccessfully discharged from services in April 2017 due to lack of engagement. By September 2017 Heather was again offered family support in an effort to complete a chemical dependency evaluation and find housing. Heather completed the chemical dependency evaluation, which recommended residential treatment, but never found housing. After failing to attend a scheduled support session in November, Heather was discharged for lack of participation. Heather also refused to participate in residential treatment, the recommendation of the chemical dependency evaluation, since she had not been ordered to comply with any recommendations--only that she complete an evaluation.

Testimony about visitation with the children followed this same pattern. In December 2017, Heather was offered nine visits but did not attend any. Of the 75 visits offered through October 2018, Heather only attended 37. And by October 11, 2018, through January 2019, Heather was in Douglas County jail on charges related to her methamphetamine use "over the last year or two." Visitation was terminated in December 2018 because it was not available to Heather while she was in jail.

While in jail Heather participated in intensive outpatient treatment (IOP). Nevertheless, the State's witnesses testified they were troubled by Heather's lack of motivation "until she was incarcerated." By the time Heather completed her period of incarceration, she was willing to produce urinalysis samples. Following her release in January 2019, Heather still had not secured employment or stable housing. From December 2016, when the children went into foster care, through the termination trial, Heather was homeless with the exception of "a mere couple of months." But Heather continued to return to the IOP program at Douglas County Corrections for ongoing treatment following her release.

The State also called the therapist who had been working with Phoenix "over the past two years" or since 2017. The therapist identified Phoenix, age 9, as "parentified," which means she feels responsible for her baby sister and for making sure her mother is "doing what she needs to be doing." The therapist testified Phoenix rationalizes missed visits with her mother as necessary because "mom needed to go pay her bills" instead. The therapist testified Heather never reached out to her about participating in therapy sessions with Phoenix and while family sessions are often part of the therapist's practice, the parent must have consistent visits and be able to provide a stable environment for the minor child before she will institute family therapy. By the time of the therapist's testimony on February 7, 2019, Phoenix had improved to the point where she only needed one session per week instead of two; her grades had improved; her impulsivity had decreased; and the number of issues she had with children in the classroom had lessened. Despite these improvements, the therapist testified the mother's lack of stability was still a factor in Phoenix's behavior problems. The therapist testified Phoenix asks random adults, including the therapist, whether they will adopt her, which indicates Phoenix is looking for stability. The therapist opined termination of Heather's parental rights was in Phoenix's best interests because Phoenix behaves better when she is in a stable, consistent home.

Heather did not testify but she offered a letter as some evidence of her desire to reunify with her children now that she is "doing what she is supposed to do." The letter assumes responsibility for wasting the preceding 2 years with "weakness and foolishness" and asks for "one last chance."

The court found that Heather's conduct satisfied the continuous and repeated neglect and failure to provide parental care and protection standard of § 43-292(2) and that it was in the best interests of the children for Heather's parental rights to be terminated. The court could not find the State had proved the elements of § 43-292(7) for the reason to do so would have a "chilling effect on a parent's rights to appeal from an adjudication." The court found termination based on § 43-292(7) was "ill-advised at this point."

## ASSIGNMENTS OF ERROR

Heather assigns as error the juvenile court's (1) finding that her parental rights should be terminated pursuant to § 42-292(2), (2) finding that termination was in the children's best interests by clear and convincing evidence, and (3) failure to allow testimony regarding permanency for the children.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Donald B. & Devin B.*, 304 Neb. 239, 933 N.W.2d 864 (2019). When the evidence is in conflict, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016).

## ANALYSIS

### GROUNDS FOR TERMINATION

Heather argues this court "is allowed to consider the actions of the parent both before and after the filing of the motion to terminate parental rights" and that her conduct during the course of this case fails to establish by clear and convincing evidence that she substantially, continuously, or repeatedly neglected to provide her children with parental care and protection. Brief for appellant at 17. We have considered Heather's conduct from December 2016 through the date of the termination trial in February 2019, and we disagree.

Even without analyzing whether failing to complete any urinalysis testing between December 2016 and February 2017 is some evidence of drug use, Heather went to jail in October 2018 through January 2019 for drug-related crimes. From December 2016 through the date of the termination trial, Heather was homeless and unemployed. This court has held homelessness and the lack of a lawful source of income may establish "continuous or repeated neglect" notwithstanding release from jail and recent progress. See *In re Interest of Steven S. et al.*, 27 Neb. App. 831, 936 N.W.2d 762 (2019). Because Heather is still not in a position to provide shelter and stability for her children, we find Heather has "continuously and repeatedly neglected" her children and has failed to provide them parental care and protection. *Id.*

### BEST INTERESTS OF CHILDREN

Under § 43-292, once the State shows that statutory grounds for termination of parental rights exist, the State must then show that termination is in the best interests of the child. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). A child's best interests are presumed to be served by having a relationship with his or her parent. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016). This presumption is overcome only when the State has proved that the parent is unfit. *Id.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *Id.* The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id.* And while

both are separate inquiries, each examines essentially the same underlying facts as the other. *Id.* See, also, *In re Interest of Steven S. et al., supra*.

Heather argues that because the court found the time her appeal of the original adjudication was pending should be excluded from the "out of home for 15 of the most recent 22 months" calculation, it is unfair to expect her to have rehabilitated herself during that same timeframe. Heather argues that because no rehabilitative plan was ever ordered, her progress in completing IOP while incarcerated should be considered as militating against termination of her parental rights.

Nothing Heather accomplished while in jail erases the fact that there was no evidence presented which suggested Heather could provide shelter and stability for her children going forward. The therapist testified Phoenix needed stability and Heather's lack of stability was a factor in the child's behavior problems. The therapist also testified that Phoenix wanted stability for herself and that the child asks random adults if they will adopt her. There was no evidence about whether Heather had much of a relationship with Arabella, who was a year old at the time of her removal and 3 years old by the time of the termination trial.

We agree with the court that it is in the best interests of the children that Heather's parental rights be terminated since Heather is not in a position to provide parental care and protection because the neglect continues. And because the juvenile court is under no obligation to institute a rehabilitative plan for a parent, we find Heather's argument that completion of IOP while in jail is enough to refute her history of neglect and lack of parental support unpersuasive. See *In re Interest of Joseph S. et al.*, 288 Neb. 463, 849 N.W.2d 468 (2014).

EVIDENCE OF PERMANENCY

The juvenile court did not allow evidence of whether the children were in "forever homes" at the time of the termination trial. The court relied on *In re Interest of Destiny A. et al.*, 274 Neb. 713, 742 N.W.2d 758 (2007), for the proposition that a court cannot consider whether an adoptive family has been identified when faced with whether or not to terminate parental rights. Heather argues this reliance is misplaced because she sought to introduce evidence that since adoptive parents had not been identified, her children were in no worse position while waiting on her to stabilize. Additionally, Heather sought to undermine the opinion of the therapist who testified the children needed stability but permanency had not been found yet with anybody else.

Heather relies on *In re Interest of Eden K. & Allison L.*, 14 Neb. App. 867, 717 N.W.2d 507 (2006), for the proposition that the evidence is relevant to whether there is any alternative to termination since there is no evidence the children are close to permanency in an adoptive home. *In re Interest of Eden K. & Allison L.* was a very different case. In *In re Interest of Eden K. & Allison L.* there was no testimony from any therapist, family support worker, or foster parent about the needs or best interests of the children. The evidence here distinguishes *In re Interest of Eden K. & Allison L.* because Phoenix's therapist testified her behaviors are better when in a stable foster home, she persists in asking adults to adopt her, and her mother has yet to achieve stability. And, Heather had nearly 11 months, exclusive of the time her original adjudication was on appeal and the time she was in jail, to find employment and stable housing, and to address her drug problem. We characterize Heather's failures as an "unwillingness" to rehabilitate herself in order to put

herself in a position to parent her children. In *In re Interest of Eden K. & Allison L.*, the mother was "unable" to avail herself of rehabilitative services because she was in prison, but there was no evidence that once she was released she would fail to provide her children with permanency. We do not believe evidence of lack of permanency was necessary for the court to conclude the clear and convincing evidence of Heather's failure to provide parental care and support, repeatedly and continuously, made termination of her parental rights in the best interests of the children.

## CONCLUSION

We believe the state proved the statutory elements of § 43-292(2) by clear and convincing evidence and that termination of Heather's parental rights was in the best interests of Arabella and Phoenix. Accordingly, we affirm the order of the juvenile court.

AFFIRMED.