IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF L.M. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF L.M. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

ALISHA M., APPELLANT.

Filed December 7, 2021.    No. A-21-233.

Appeal from the Separate Juvenile Court for Douglas County: CHAD M. BROWN, Judge.
Affirmed.

Karen C. Hicks, of Hicks Law, P.C., L.L.O., for appellant.

Donald W. Kleine, Douglas County Attorney, Nathaniel Barnhill, and Zachary Severson,
Senior Certified Law Student, for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Alisha M. appeals the order of the separate juvenile court of Douglas County which
adjudicated her minor children under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). She argues
that the evidence was insufficient to support the allegations in the petition. We affirm.

## BACKGROUND

Alisha is the mother of three children: one son, L.M., approximately 12 years old; and two
daughters, A.M., approximately 14 years old, and S.M., approximately 5 years old. Lloyd M. is
the father of the older two children, and resides at the family home with Alisha and the three

- 1 -

children. A Department of Health and Human Services (DHHS) intake was received on October 17, 2020, based upon an accusation by L.M. that Lloyd "whooped" him with an extension cord.

On October 19, 2020, a petition was filed containing the following allegations: L.M., A.M., and S.M. lack proper parental care by reason of the fault or habits of Alisha to wit: (a) Alisha failed to protect L.M. from inappropriate physical contact; (b) Alisha has subjected the juveniles to inappropriate physical contact; (c) Alisha has failed to place herself in a position to parent the juveniles; (d)) Alisha has failed to provide proper parental care, support and/or supervision for the juveniles; and (e) the juveniles are at risk for harm.

An adjudication hearing was held on January 22 and February 11, 2021. The following evidence was adduced. The witness who called the police testified that on October 17, 2020, he saw a man pulling a boy through multiple backyards, then the man punched the boy in the back twice. He saw the boy was "very distraught, crying quite heavily." As the witness approached, he told the man to knock it off, and the man responded, telling the witness to mind his own business. The boy looked at the witness and said, "Please, help me, he hits me all the time." The boy became "very animated and crying much stronger." The man continued to pull the boy toward a house, and then reached a 4-foot chain-link fence. The man tried to pull the boy over the fence. The mother then came out with two younger girls and yelled at the boy "to get his ass inside." The boy was still crying when the police arrived.

Officer Bryson Blandford, a responding police officer, testified that when he first arrived, he saw L.M. crying, screaming, and asking for help. L.M. said "he had been beaten and that he needed help and wanted to get out of there." L.M. told the officer that he had been beaten with an extension cord by his father. The officer observed injuries on L.M. that were consistent with being struck by an extension cord. L.M. told the officer that his mother, Alisha, was there and she did not try to intervene.

Photos of L.M., taken on October 17, 2020, show cuts and bruising to the hand and cuts on his forearms, as well as a raised welt on the forearm with a U shape. L.M. did not specify exactly where Alisha was when he was assaulted, but did state "she was there" and that she did not try to intervene. In a statement to the DHHS worker and her supervisor, S.M. confirmed that she saw Lloyd hit L.M. with an extension cord. S.M. indicated that her mother, Alisha, was there with A.M. and that Alisha cried but did not try to stop the beating.

During that same conversation with the DHHS worker, S.M. said that she could not talk to the DHHS worker because her mom (Alisha) said that the DHHS worker "take[s] children away." S.M. identified where guns were kept in the home, and reported that L.M. would get the guns out to play with them. S.M. stated she received "whoopings" by both parents at different times by different instrumentalities such as belts and cords, and that she got the "whoopings" on her arms, legs, and "tummy." The DHHS worker stated that Alisha wanted Lloyd to come home and that she did not want this incident to separate them.

DHHS received an unrelated intake for the family on October 5, 2020. A.M. was hospitalized for an abscessed tooth. In response to DHHS questions, Alisha stated the children had never missed a dental appointment, and she knew that A.M. needed medical care for her tooth but was unable to move up the appointment. According to the dental office, the family was first seen in January 2018, and since then, the family had missed 34 appointments. S.M. had been seen in May 2020, and needed a tooth removed. L.M. was last seen in the summer of 2018 and had two

cavities at that time. A.M. was last seen in January 2019, and at that time, her tooth needed to be extracted. The DHHS worker was concerned because the family was not following up on appropriate medical care.

At the adjudication hearing, Alisha testified that on October 17, 2020, L.M. was not beat or "whooped" because no beatings or "whoopings" occurred. Rather, according to Alisha, four boys had been in the house without permission, so Lloyd and Alisha attempted to have a calm conversation with L.M. to inform him why they did not want people in their house. L.M. became irritated, mumbling under his breath and walking away from Lloyd and Alisha; they followed him around the house, still trying to talk to L.M. L.M. threatened to run away, and Alisha said she would call the cops on him. L.M. got angry and jumped out of his bedroom window.

Alisha testified that she did not see Lloyd drag L.M. through yards, attempt to pull him over a fence, hit L.M. with anything either inside or outside the home, and did not observe any marks or scratches on L.M. on October 17, 2020. Alisha did acknowledge that she was upset that day, and may have said things out of anger, including that L.M. needed a "whooping". According to Alisha, she and Lloyd normally discipline the children by grounding them and taking away their things. She denied telling her children that they could not talk to the police or to child protective services.

Blandford's body camera recorded the officers responding to the call. When Blandford arrived, L.M. was crying and holding his arms up in front of him. On L.M.'s arms were visible raised welts, which L.M. said occurred when Lloyd hit him with an extension cord. According to L.M., his mother saw Lloyd hit him, and she told Lloyd to stop at first but he did not stop. In response to Blandford's question about whether L.M. should be taken to the hospital, Alisha can be heard saying "He needs his ass whooped, that's his fucking problem." As Blandford and L.M. were preparing to leave the scene about an hour later, Alisha told L.M. that she needed the shoes that he was currently wearing on his feet. At multiple points in the footage, Alisha is heard expressing concern about Lloyd and herself, but not about L.M. or his injuries.

Officer Devin Washington's body camera footage was also submitted as evidence. Washington had more interaction with Alisha, and she stated that their gun, an AR-15, was missing and another gun had disappeared too. She explained that she and Lloyd were trying to discipline L.M. when he jumped out the window. She said having L.M. in the house was like "sleeping with the enemy" and that L.M. was a "bad ass little boy." Alisha did not express concern for L.M. throughout the footage; rather, she expressed concern about her and Lloyd's employment. Later in the encounter, Alisha is heard telling the officers to take L.M. to the hospital for a mental evaluation.

Following the hearing, the juvenile court issued an adjudication order based upon the allegations against Alisha. The juvenile court found the testimony of the eyewitness, both police officers, the nurse practitioner, and the DHHS worker to be individually credible, probative, reliable, and entitled to weight. The juvenile court found that the allegations in count 1(a), (c), (d), and (e) in the petition to be true by a preponderance of the evidence, and dismissed count 1(b) for insufficient evidence. L.M., A.M., and S.M. were found to be within the meaning of § 43-247(3)(a). Alisha timely appealed.

ASSIGNMENTS OF ERROR

Restated, Alisha assigns that the juvenile court erred in finding that the State proved by a preponderance of the evidence that (1) she failed to protect L.M. from inappropriate physical contact; (2) she failed to place herself in a position to parent said juveniles; (3) she failed to provide proper care, support, and/or supervision of said juveniles; (4) the juveniles were at a risk for harm; and therefore, (5) the juvenile court lacked jurisdiction over the juveniles as no definite risk of future harm was established.

STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Taeson D.*, 305 Neb. 279, 939 N.W.2d 832 (2020). When the evidence is in conflict, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016).

ANALYSIS

Alisha argues that the evidence was insufficient to meet the State's burden, because the State failed to show by a preponderance of the evidence that the allegations against Alisha were true. We disagree.

At the adjudication stage, in order for a juvenile court to assume jurisdiction of a minor child under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence, and the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsections of § 43-247. *In re Interest of Trenton W. et al.*, 22 Neb. App. 976, 865 N.W.2d 804 (2015). While the State need not prove that the juvenile has actually suffered physical harm, at a minimum, the State must establish that without intervention, there is a definite risk of future harm. *Id.*

In the present case, the petition alleged that Alisha failed to protect L.M. from inappropriate physical contact, subjected the juveniles to inappropriate physical contact, failed to place herself in a position to parent the juveniles, failed to provide proper parental care, support, and or supervision for the juveniles, and for those reasons, the juveniles were at risk for harm. The juvenile court dismissed the count regarding subjecting the juveniles to inappropriate physical contact. Upon our de novo review of the record, we find the evidence was sufficient to support the remaining allegations in the petition.

The evidence adduced at trial provided two different narratives, one based on Alisha's testimony and the other based on multiple witnesses and physical evidence. When the evidence is in conflict, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of LeVanta S., supra.* The juvenile court found that the eyewitness, two officers, the nurse practitioner, and the DHHS worker's testimonies were credible and entitled to weight.

The events of October 17, 2020, formed the basis of the majority of the allegations in the petition. The preponderance of the evidence established that Lloyd beat L.M. with an extension cord and Alisha did not intervene to protect her son. In response to a 911 call by a witness, police officers arrived and Blandford testified that he saw L.M. crying and screaming and asking for help,

saying he had been beaten, he needed help and "wanted to get out of there." L.M. told the officer that his father had beaten him with an extension cord, and Blandford noticed injuries on L.M. consistent with such a beating. L.M. stated that his mother was there during the assault but did not try to intervene. L.M. gave the same information to the medics who arrived to treat him at the scene.

When Blandford asked Alisha whether L.M. should be taken to the hospital, she said he needed "to get his ass whooped." Blandford testified that Alisha was upset and uncooperative during the investigation, and she did not express any concern for L.M.'s injuries. Blandford also testified that he had responded to approximately five calls at the family home since September 8, 2020, and the nature of those calls were domestic disturbances.

Washington also responded to the 911 call, and observed L.M. upset, frantic, crying, and asking for help. L.M. had visible injuries on his arm, raised welts; it appeared he had been struck with some type of object. Additionally L.M. had lacerations on his hands and redness on his back. Alisha was present, and Washington noted she was concerned with why Lloyd was being detained, she did not acknowledge the assault, or express any concern for L.M.'s injuries. Alisha stated she wanted L.M. to be transported to the hospital for a mental, not physical, evaluation.

The nurse practitioner who completed a medical exam of L.M. on October 21, 2020, confirmed the injuries that were observed by the officers. She found that the explanation given by L.M., that he was beat with an extension cord, was consistent with the injuries that she observed.

Prior to October 17, 2020, there was an additional intake for the family. A.M. had been hospitalized due to an abscessed tooth. The DHHS worker opined that the children were at risk for harm in their mother's care, relying on Alisha being present at the time of the incident on October 17, the dental situation, and Alisha instructing S.M. not to speak to the DHHS worker.

Alisha argues that the State failed to prove that she actually witnessed the alleged excessive physical discipline. However, both L.M. and S.M. stated that she was present at the time of the incident and did not intervene. This is sufficient to establish the allegation by a preponderance of the evidence.

Next, Alisha argues that the State failed to provide any evidence that she was unable to parent the juveniles. Based on the failure to adequately safeguard the firearms in the house, the inadequate dental care, the physical discipline of L.M. and S.M., and lack of concern relating to L.M.'s injuries, there is sufficient evidence to prove Alisha has not placed herself in a position to parent her children. The court was particularly struck by the fact that Alisha wanted the shoes off of L.M.'s feet when he was preparing to leave the scene.

Finally, Alisha argues that the State failed to produce evidence that would satisfy the two-step inquiry in determining if a juvenile lacks proper parental care. "Proper parental care" includes providing a home, support, subsistence, education, and other care necessary for the health, morals, and well-being of the child. *In re Interest Jeremy U. et al.*, 304 Neb. 734, 936 N.W.2d 733 (2020). It commands that the child not be placed in situations dangerous to life or limb, and not be permitted to engage in activities injurious to his health or morals. *Id*.

The first step is to determine if the juvenile is lacking proper parental care, whether such care is being provided by a parent, a guardian, or a custodian. *Id*. If the juvenile is not lacking that type of care (and there is no definite risk of harm), adjudication under this provision of § 43-247(3)(a) is improper. *In re Interest Jeremy U. et al., supra*. If, on the other hand, the juvenile

is lacking such care, the court should proceed to the second step: Does that condition result from the fault or habits of the juvenile's parent, guardian, or custodian? *Id*. If the answer to that question is also yes, then the juvenile court should take jurisdiction of the juvenile and proceed to a proper disposition. *Id*.

As stated multiple times, there is sufficient evidence to prove that L.M. was beaten with an extension cord by Lloyd and Alisha did not stop it or express any concern for his injuries. When he was leaving the house, she attempted to take the shoes off his feet. S.M. stated that she has been "whooped" by objects as well. A.M. did not receive the dental care she needed and ended up being hospitalized with an abscessed tooth. All of these actions combine to show that the children lack proper parental care, and this is the result of Alisha's fault or habit. As such, the State has presented sufficient evidence to satisfy the two part test.

Based on the foregoing, we find that the State proved by a preponderance of the evidence that the children were at a definite risk for future harm due to the fault or habits of Alisha. We therefore conclude that the juvenile court did not err in adjudicating the children under § 43-247(3)(a).

## CONCLUSION

Upon our de novo review of the record, we conclude that the evidence was sufficient to support the juvenile court's order adjudicating the children under § 43-247(3)(a). We affirm.

AFFIRMED.