Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/30/2018 09:13 AM CST

- 421 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

In re Interest of Lizabella R., a child
under 18 years of age.
State of Nebraska, appellee, v.
Elizabeth L., appellant.

___ N.W.2d ___

Filed January 9, 2018.    No. A-17-401.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches conclusions independently of the juvenile court's findings.
2. **Evidence: Appeal and Error.** When the evidence is in conflict, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.
3. **Appeal and Error.** Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.
4. ____. Plain error may be asserted for the first time on appeal or be noted by an appellate court on its own motion.
5. **Parental Rights: Proof.** Parental rights may be terminated pursuant to a showing of best interests of the child and by establishing, through clear and convincing evidence, one of the 11 statutory bases for termination under Neb. Rev. Stat. § 43-292 (Reissue 2016).
6. **Evidence: Words and Phrases.** Clear and convincing evidence is the amount of evidence that produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved.
7. **Parental Rights.** Neb. Rev. Stat. § 43-292(2) (Reissue 2016) provides for termination when the parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection.
8. ____. A parent's incarceration, standing alone, does not provide a ground for termination of parental rights.
9. **Parental Rights: Abandonment.** In a termination of parental rights case, parental incarceration may properly be considered along with other

- 422 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

factors in determining whether parental rights should be terminated based on neglect.

10. **Parental Rights.** Although incarceration itself may be involuntary, the underlying criminal conduct that resulted in incarceration is voluntary.

11. ____. Neb. Rev. Stat. § 43-292(6) (Reissue 2016) provides for termination when, following a determination that a juvenile is one as described in Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), reasonable efforts to preserve and reunify the family under the direction of the court have failed to correct the conditions leading to the determination.

12. ____. A court order to complete relinquishment counseling is, by its very nature, not an effort intended to preserve and reunify the family.

13. **Appeal and Error.** An appellate court is not obligated to engage in an analysis which is not necessary to adjudicate the case and controversy before it.

14. **Parental Rights: Proof.** Neb. Rev. Stat. § 43-292(7) (Reissue 2016) states that the statutory grounds for termination are met if the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months.

15. ____: ____. In addition to proving a statutory ground, the State must also show that termination of parental rights is in the best interests of the child.

16. **Constitutional Law: Parental Rights.** A parent's right to raise his or her child is constitutionally protected.

17. **Parental Rights: Presumptions: Proof.** There is a rebuttable presumption that the best interests of the child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit.

18. **Constitutional Law: Parental Rights: Words and Phrases.** In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being.

19. **Parent and Child.** The law does not require perfection of a parent; rather, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child.

Appeal from the Separate Juvenile Court of Douglas County: Elizabeth Crnkovich, Judge. Reversed and remanded for further proceedings.

Maureen K. Monahan for appellant.

Donald W. Kleine, Douglas County Attorney, Jennifer C. Clark, and Laura Elise Lemoine, Senior Certified Law Student, for appellee.

Pirtle, Riedmann, and Arterburn, Judges.

Riedmann, Judge.

## I. INTRODUCTION

Elizabeth L. appeals from an order of the separate juvenile court of Douglas County terminating her parental rights. For the reasons that follow, we reverse the order and remand the cause for further proceedings.

## II. BACKGROUND

Elizabeth is the biological mother of Lizabella R., born in January 2015, and Jose R., born in February 2016. The children have different biological fathers. The juvenile court terminated the parental rights of Lizabella's biological father, and Jose's biological father has indicated that he would like to relinquish his parental rights. This appeal, however, involves only the termination of Elizabeth's parental rights to the two children.

In August 2015, the State of Nebraska filed a petition to adjudicate Lizabella pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) based upon the fault or habits of Elizabeth. The State subsequently filed an amended petition adding a second count, which alleged improper support through no fault of Elizabeth. The petitions arose from an incident wherein Lizabella, who was in the care of Elizabeth's sister and her boyfriend, was found "unresponsive . . . unclean, and with a yeast infection on her skin." At the time of this incident, Elizabeth was incarcerated on federal drug charges. The juvenile court granted an ex parte order for immediate temporary custody and placed Lizabella in foster care. Lizabella has remained in foster care since that time.

Elizabeth was released from her pretrial incarceration in November 2015 on the condition that she enter residential

- 424 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

treatment. She remained out of custody until trial on her federal charges in late May 2016.

Jose was born in February 2016, while Elizabeth was out of custody. The State did not file for his removal immediately following his birth.

The juvenile court adjudicated Lizabella in April 2016 and, the following month, entered a dispositional order in which it ordered Elizabeth to have unsupervised visitation that could transition to overnight visits, to abide by the rules and regulations of her federal probation, and to maintain safe, stable housing and a source of legal income.

In late May 2016, after entry of the dispositional order, Elizabeth was found guilty of two federal drug charges and was thereafter sentenced to 10 years' imprisonment on each of two convictions, with the sentences to be served concurrently. She was remanded into custody at the end of May.

Following Elizabeth's incarceration, the State filed a second supplemental petition, in June 2016, to adjudicate Jose pursuant to § 43-247(3)(a) based upon the fault or habits of Elizabeth and Jose's biological father. The juvenile court granted an ex parte order for immediate temporary custody and placed Jose in foster care.

The juvenile court adjudicated Jose in September 2016. Elizabeth was subsequently ordered to complete relinquishment counseling as to both children. In November, the State filed a motion to terminate Elizabeth's parental rights to the children, and trial was held on March 8, 2017.

At trial, the State presented testimony from Allison McElderry and Kati Caniglio, each of whom had worked with Elizabeth and her children as a family permanency specialist (FPS). McElderry, the FPS who worked with the family from the inception of the case through August 2016, testified that Elizabeth was originally incarcerated on her federal charges but was released from jail in early November 2015 to enter residential treatment. McElderry stated that Elizabeth successfully completed that program. She also testified as to the

- 425 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

voluntary services that Elizabeth participated in while out of custody, which included working with her family support worker, early development network services, and a children's respite care center; working with Lizabella's doctor's regarding her special needs; and receiving support from her licensed alcohol and drug counselor and therapist through her residential treatment facility.

In a court memorandum from November 2015, McElderry recommended a number of services for Elizabeth. McElderry testified that Lizabella is blind, immobile, uses a "G-tube" for feeding, has permanent brain damage, and will be a paraplegic for the rest of her life. As a result of these conditions, one of her recommendations was for Elizabeth to participate in training to learn how to provide for Lizabella's special needs. McElderry's other recommendations for Elizabeth included participating in supervised visitation, following the recommendations through the residential program, participating in drug testing, completing a parenting assessment, and obtaining appropriate housing and employment. At trial, McElderry testified that Elizabeth completed each of these recommendations other than the parenting assessment, which she did not set up for Elizabeth. McElderry further testified that Elizabeth never had a positive drug test, she consistently participated in visitation with Lizabella three to five times a week for 3 hours at a time, and she never missed a visit.

After Jose was born in February 2016, McElderry did not file an affidavit for his removal because she believed that Elizabeth was an appropriate care provider for him at the time and that Elizabeth had been making progress through the services offered. At the time of Jose's birth, Elizabeth had stable, appropriate housing and was working through a staffing agency. McElderry testified that the only change that later made Elizabeth an inappropriate care provider was the fact that she was incarcerated.

Following Elizabeth's federal convictions, McElderry asked Elizabeth if she had any information regarding her

- 426 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

final sentencing and Elizabeth stated that "she was facing ten years." Due to Lizabella's health conditions, McElderry testified that Lizabella would not be able to travel to visit Elizabeth while incarcerated.

The State also presented the testimony of Caniglia, the FPS who worked with Elizabeth and her children from August 2016 through the time of the termination hearing. Caniglia testified that Elizabeth is currently incarcerated in a federal prison in Minnesota and that although she has not had visitation with either child since her incarceration, she maintains telephone contact with both children. Caniglia further testified that Elizabeth has a "very open relationship with the foster parent[s]." She stated that she believed Elizabeth "had done very well" prior to incarceration and that Elizabeth was a good caretaker when not in custody. However, Caniglia testified that she believed it was in the children's best interests to terminate Elizabeth's parental rights due to the length of time Elizabeth will be incarcerated and the resulting inability to provide them with a safe, stable placement.

The juvenile court found, by clear and convincing evidence, that the State had established the statutory grounds set forth in Neb. Rev. Stat. § 43-292(2), (6), and (7) (Reissue 2016). Furthermore, the court concluded that it was in the children's best interests to terminate Elizabeth's parental rights. Elizabeth now appeals.

### III. ASSIGNMENTS OF ERROR

Elizabeth assigns, restated, that the juvenile court erred in (1) finding her children to come within the meaning of § 43-292(2), (2) finding her children to come within the meaning of § 43-292(6), and (3) determining that it would be in the best interests of the children to terminate her parental rights.

### IV. STANDARD OF REVIEW

[1,2] An appellate court reviews juvenile cases de novo on the record and reaches conclusions independently of the

- 427 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

juvenile court's findings. *In re Interest of Noah B. et al.*, 295 Neb. 764, 891 N.W.2d 109 (2017). When the evidence is in conflict, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016).

## V. ANALYSIS

### 1. Jose

Elizabeth assigns that the juvenile court erred in terminating her parental rights to both of her children. However, we find that the analysis for each child differs due to the fact that Lizabella was removed in August 2015 and Jose was not removed until June 2016. Accordingly, we address each child in turn.

[3,4] We note that the juvenile court found that both children came within the meaning of § 43-292(7), which provides for termination when the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. However, it is clear from the record that Jose had been in an out-of-home placement for approximately 9 months as of the time of the termination hearing. The juvenile court's finding that Jose came within the meaning of § 43-292(7) constitutes plain error. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004). Plain error may be asserted for the first time on appeal or be noted by an appellate court on its own motion. *Id*. Finding that Jose did not come within the meaning of § 43-292(7), we turn to subsections (2) and (6).

### (a) § 43-292(2)

Elizabeth argues that the juvenile court erred in finding that Jose came within the meaning of § 43-292(2) because she was

- 428 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

found to be an appropriate caretaker for Jose from his birth until she was incarcerated on her federal charges. She claims that her parental rights were terminated solely due to her incarceration and that incarceration alone cannot constitute a ground for termination. We agree.

[5-7] Parental rights may be terminated pursuant to a showing of best interests of the child and by establishing, through clear and convincing evidence, one of the 11 statutory bases for termination under § 43-292. Clear and convincing evidence is the amount of evidence that produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved. *In re Interest of Kalie W.*, 258 Neb. 46, 601 N.W.2d 753 (1999). Section 43-292(2) provides for termination when the parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection.

[8-10] The Nebraska Supreme Court has held that a parent's incarceration, standing alone, does not provide a ground for termination of parental rights. See *In re Interest of Kalie W., supra*. However, in a termination case, parental incarceration may properly be considered along with other factors in determining whether parental rights should be terminated based on neglect. *Id*. Similarly, a parent's inability to perform his or her parental obligations due to imprisonment may likewise be considered. *Id*. Although incarceration itself may be involuntary, the underlying criminal conduct that resulted in incarceration is voluntary. See *id.*

The State argues that Elizabeth's voluntary conduct resulted in her incarceration and has now put her in a position where she is unable to provide for the needs of her children. The State claims that if Elizabeth's rights are not terminated, her children will spend the majority of their lives in foster care awaiting permanency. On this basis, the State argues that it is appropriate to consider her incarceration and 10-year sentence in finding that Jose comes within the meaning of § 43-292(2).

- 429 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

In this case, the State's evidence concentrated on Elizabeth's federal convictions and sentences. The court received into evidence a certified copy of the indictment and judgment in Elizabeth's federal criminal case. The judgment states that Elizabeth was sentenced to 120 months' imprisonment for each of two convictions, with the sentences to be served concurrently.

At the termination hearing, the State presented evidence from each FPS who worked with Elizabeth and her children. That testimony with respect to neglect focused on Elizabeth's incarceration and her subsequent inability to provide for her children. The State presented no additional evidence to prove that Elizabeth neglected either Jose or Lizabella pursuant to § 43-292(2).

The State correctly argues that a parent's incarceration as well as the voluntary conduct that resulted in incarceration may be considered when determining whether that parent has neglected his or her child. However, it is well established that incarceration alone does not provide a sufficient ground for termination. See, *In re Interest of Leland B.*, 19 Neb. App. 17, 797 N.W.2d 282 (2011); *In re Interest of Josiah T.*, 17 Neb. App. 919, 773 N.W.2d 161 (2009). In this case, the State focused solely on Elizabeth's incarceration and her resulting inability to provide for her children while imprisoned. Without other evidence that Elizabeth has neglected Jose or Lizabella, we cannot find that her incarceration alone justifies termination of her parental rights under § 43-292(2).

Each FPS testified that Elizabeth's incarceration was the primary obstacle preventing her from being able to provide for and take care of her children. Caniglia testified that she believed Elizabeth's rights should be terminated based on the length of time Elizabeth will be incarcerated and the resulting inability to provide stable placement for Jose and Lizabella. However, she also testified that Elizabeth was a very good caretaker when not incarcerated. Similarly, McElderry testified that when she was assigned to the case, she did not file for

- 430 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

Jose's removal following his birth in February 2016 because, at that time, Elizabeth was an appropriate care provider for him. She testified that the only change that subsequently made Elizabeth an inappropriate care provider was that "[Elizabeth] was incarcerated." Neither FPS testified to any neglect of the children aside from Elizabeth's inability to provide for them while incarcerated.

While it is undisputed that Elizabeth is currently incarcerated and that she was sentenced to a total term of 10 years' imprisonment, we find nothing in the record indicating how much of that sentence Elizabeth will likely serve before being paroled. McElderry testified that when she asked Elizabeth if she had any information on her final sentencing, Elizabeth indicated only that "she was facing ten years." Given the lack of evidence regarding an expected release date, we cannot say with precision how long Elizabeth will be away from her children. See *In re Interest of Josiah T., supra*.

The State also presented evidence that Elizabeth has shown a desire to maintain contact with her children while incarcerated. Caniglia testified that since Elizabeth has been incarcerated, she has maintained telephone contact with both children and has a "very open" and "very good" relationship with the children's foster parents. Furthermore, Caniglia stated that she would support continued telephone contact pending any appeal of the termination of Elizabeth's parental rights. While it is clear that Elizabeth has not been able to care for and provide for her children since she has been incarcerated, she has shown a continued desire and interest in playing a role in their lives and keeping up to date with their development.

We also note that the State presented no evidence indicating that Elizabeth had previously been incarcerated or had prior involvement with the Department of Health and Human Services. From the record before us, it appears that this family first came to the attention of the department in August 2015 when Lizabella was injured by her aunt's boyfriend while in the care of the aunt during Elizabeth's pretrial incarceration.

- 431 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

There is nothing in the record to indicate that, prior to that incident, Elizabeth had failed to provide Lizabella with necessary care and protection.

We recognize that incarceration has played a role in supporting termination of parental rights. For example, in *In re Interest of Zanaya W. et al.*, 291 Neb. 20, 863 N.W.2d 803 (2015), the Nebraska Supreme Court upheld the termination of a father's parental rights based, in part, upon his incarceration. However, in *In re Interest of Zanaya W. et al.*, the father admitted the allegations of the petition that he had substantially, continuously, and repeatedly neglected his children; that he refused to give them parental care and treatment; and that termination would be in their best interests. The factual basis presented by the State to support the allegations involved more than the fact that he was incarcerated. According to the Supreme Court, the State also showed that the father committed an additional crime while incarcerated, thus extending his sentence. It also showed that he used marijuana daily while the children were in his custody. The court concluded that these factual bases were sufficient to support the father's admission to the allegation that he had substantially and continuously or repeatedly refused to give the children proper parental care.

While in the present case the State presented evidence of Elizabeth's crimes and the anticipated length of her sentences, it did not present any additional evidence similar to that in *In re Interest of Zanaya W. et al., supra*. We have no evidence that she used drugs while Jose was in her custody, nor do we have any admission by Elizabeth that she neglected and refused to provide parental care to Jose prior to her incarceration.

Upon our de novo review of the record, we find that the State failed to present clear and convincing evidence that Elizabeth has neglected Jose pursuant to § 43-292(2). The State's evidence focused solely on Elizabeth's current incarceration, and a parent's incarceration, standing alone, does not provide a

- 432 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

ground for termination of parental rights. Accordingly, we reverse the juvenile court's order finding that Jose came within the meaning of § 43-292(2).

### (b) § 43-292(6)

Elizabeth claims that the juvenile court erred in finding that Jose came within the meaning of § 43-292(6) because she voluntarily participated in a number of services while she was out of custody and the additional services that were ordered postadjudication could not be completed or offered through the juvenile court. We agree.

[11] As stated above, parental rights may be terminated following a showing of best interests and establishing, by clear and convincing evidence, the existence of one of the statutory grounds for termination in § 43-292. Section 43-292(6) provides for termination when, following a determination that a juvenile is one as described in § 43-247(3)(a), reasonable efforts to preserve and reunify the family under the direction of the court have failed to correct the conditions leading to the determination.

In this case, Lizabella was removed in August 2015 but was not adjudicated until April 2016. From the time Elizabeth was released from pretrial custody in November until she was convicted in late May 2016, she underwent a number of voluntary services, including residential treatment. She further participated in services, which included working with her family support worker, early development network services, and a children's respite care center; working with Lizabella's doctors regarding her special needs; and receiving support from her licensed alcohol and drug counselor and therapist through her residential treatment placement.

Elizabeth participated in and completed all of the recommendations made by her FPS, with the exception of a parenting assessment because the FPS failed to set one up. She never tested positive on a drug test and visited her children three to five times a week without missing a visit. By the time Jose was

- 433 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

born in February 2016, Elizabeth had obtained stable, appropriate housing and soon thereafter obtained employment.

Following Elizabeth's incarceration in May 2016, McElderry stated that she was no longer able to provide Elizabeth with services. McElderry testified that she did not request visitation for the children with Elizabeth because it was not clear whether Elizabeth was allowed to have visits and Lizabella's health prohibited her from traveling to visit Elizabeth.

Both McElderry and Caniglia testified that Elizabeth had made progress with the services she was participating in when she was out of custody. McElderry stated that it was because of this progress that she did not file for Jose's removal immediately following his birth. She testified that, at that time, Elizabeth was an appropriate care provider for Jose. Additionally, Caniglia testified that Elizabeth had been doing very well prior to her incarceration and that she was a very good caretaker when not incarcerated.

The juvenile court adjudicated Lizabella pursuant to § 43-247(3)(a) in April 2016. The following month, the court entered a dispositional order in which it ordered Elizabeth to have unsupervised visitation with Lizabella; to maintain safe, stable housing and a source of legal income; and to abide by the rules and regulations of her federal probation. However, at that time, Elizabeth had not yet been sentenced on her federal convictions. Several days later, Elizabeth was sentenced to prison, rather than probation. She was subsequently taken into custody and has remained incarcerated since then. Because Elizabeth was sentenced to prison rather than probation, which the juvenile court appears to have anticipated, she could not comply with the court's order to abide by the rules of federal probation.

Jose was adjudicated pursuant to § 43-247(3)(a) in September 2016. Thereafter, the juvenile court ordered Elizabeth to complete relinquishment counseling for Jose and Lizabella. It is undisputed that Elizabeth never participated in relinquishment counseling for either child.

- 434 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

In its motion for termination of Elizabeth's parental rights, the State asserted that Elizabeth had been ordered to comply with various rehabilitation plans, which included the dispositional orders wherein she was ordered to have unsupervised visitation with Lizabella, to maintain housing and a source of income, to abide by the rules of her federal probation, and to complete relinquishment counseling. At the time that the first dispositional order was entered, Elizabeth had stable, appropriate housing and was employed. She had also been consistently participating in supervised visitation. However, Elizabeth was sentenced to 10 years' imprisonment after the juvenile court entered this order, which prevented her from complying with its orders. In particular, we note that she could not abide by the rules of her federal probation because, as of the date of the order, she had not yet been sentenced and was subsequently sentenced to incarceration rather than probation. Elizabeth also did not complete relinquishment counseling because she did not wish to relinquish her parental rights to either child.

The evidence presented by the State shows that Elizabeth voluntarily participated in many services prior to the adjudication of either child. Each FPS testified that Elizabeth was making progress and doing well with those services, so much so that McElderry found her to be an appropriate caretaker and did not file for removal following Jose's birth until Elizabeth was sentenced and incarcerated on her federal convictions. McElderry testified that Elizabeth successfully complied with all of her recommendations except for completing a parenting assessment, which McElderry failed to set up.

[12] We do not find Elizabeth's failure to comply with the court's orders to abide by the rules of her federal probation and to complete relinquishment counseling to be indicative of the failure of reasonable efforts to preserve and reunify her with her children. A court order to complete relinquishment counseling is, by its very nature, not an effort intended to preserve and reunify the family. Additionally, it was not possible

- 435 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

for Elizabeth to comply with the court's order to abide by the rules of federal probation when she was not sentenced to federal probation; therefore, we find Elizabeth's failure to comply with such a provision to be outside of her control.

Upon our de novo review of the record, we find that the State failed to present clear and convincing evidence that reasonable efforts failed to correct the conditions leading to the adjudication of Jose pursuant to § 43-292(6). Elizabeth participated in an extensive number of services, demonstrating her commitment to improving her parenting skills and regaining custody of her children, and she complied with every court order that she could. We therefore reverse the order of the juvenile court terminating Elizabeth's parental rights to Jose and remand the cause for further proceedings.

### (c) Best Interests

[13] Elizabeth also argues that the juvenile court erred in determining that termination of her parental rights is in her children's best interests. However, because we conclude that the State failed to provide sufficient evidence to prove that termination of Elizabeth's parental rights to Jose was warranted pursuant to § 43-292(2) or (6), and because we accordingly remand the cause for further proceedings, we do not address this assignment of error with respect to Jose. An appellate court is not obligated to engage in an analysis which is not necessary to adjudicate the case and controversy before it. *In re Interest of Darryn C.*, 295 Neb. 358, 888 N.W.2d 169 (2016).

### 2. Lizabella

We turn next to whether the juvenile court erred in terminating Elizabeth's parental rights to Lizabella.

### (a) Statutory Grounds
### for Termination

[14] While Elizabeth argues that the juvenile court erred in terminating her parental rights under § 43-292(2) and (6), she does not assign as error the termination of her parental rights

- 436 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

under § 43-292(7). Section 43-292(7) states that the statutory grounds for termination are met if the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. Here, it is undisputed that Lizabella was removed in August 2015 and remained in foster care through the time of the termination hearing in March 2017. Therefore, it is clear that the statutory grounds under § 43-292(7) are met with respect to Lizabella.

### (b) Best Interests

Elizabeth argues that the juvenile court erred in finding that it was in Lizabella's best interests to terminate Elizabeth's parental rights. She claims that the court's finding rests solely on the fact that she is incarcerated and is contrary to evidence that she continues to have a relationship and telephone contact with her children. Elizabeth argues that incarceration alone does not make her an unfit parent. We agree.

[15-19] In addition to proving a statutory ground, the State must also show that termination of parental rights is in the best interests of the child. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). A parent's right to raise his or her child is constitutionally protected. Therefore, before a court may terminate parental rights, the State must show that the parent is unfit. *Id*. There is a rebuttable presumption that the best interests of the child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id*. In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being. *Id*. The best interests analysis and the parental fitness analysis are fact-intensive inquiries, and while they are separate, each examines

- 437 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

essentially the same underlying facts. *Id*. The law does not require perfection of a parent; rather, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005).

As addressed above, incarceration is a factor that may be considered in determining whether parental rights should be terminated, but incarceration alone cannot be the sole basis for termination. *In re Interest of Jahon S., supra*. However, it is proper to consider a parent's inability to perform his or her parental obligations due to incarceration. *Id*.

The evidence presented by the State with regard to Lizabella's best interests focused on Elizabeth's inability to provide for Lizabella while Elizabeth is incarcerated. Caniglia testified that based on the length of time Elizabeth will be incarcerated and the resulting inability to provide stable placement, she believed termination of Elizabeth's parental rights was in the children's best interests. However, she conceded that Elizabeth had been doing very well and had made progress toward rehabilitating herself as a parent prior to her incarceration.

As addressed above, the evidence presented by the State indicates that during the pendency of this case, Elizabeth has participated in numerous voluntary services. The testimony presented indicated that she was a good caretaker and an appropriate parent to Jose while she was not incarcerated. Elizabeth regularly participated in visitation with Lizabella three to five times per week for 3 hours at a time. Immediately prior to her incarceration, the juvenile court ordered unsupervised visitation that could transition to overnight visits. Since Elizabeth has been incarcerated, she has maintained contact with her children by telephone and keeps up to date with their lives through their foster parents and caseworker.

The record shows that Elizabeth parented Lizabella from the time of her birth in January 2015 until Elizabeth's initial incarceration on her federal charges. Since then, she has actively worked to improve her parenting skills and to

- 438 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF LIZABELLA R.
Cite as 25 Neb. App. 421

maintain a relationship with Lizabella. The progress that she made is reflected in the juvenile court's order immediately prior to her incarceration wherein she was allowed to have unsupervised visitation transitioning into overnight visits. Due to Lizabella's health conditions, she requires a substantial amount of special care. Elizabeth voluntarily participated in all recommended services to obtain the training necessary to be able to properly provide such care for Lizabella. Furthermore, Elizabeth has demonstrated her commitment to a continuing relationship with Lizabella despite Elizabeth's incarceration. Upon consideration of the above, we cannot find that it is in Lizabella's best interests to terminate Elizabeth's parental rights despite the fact that she is incarcerated. We therefore reverse the order of the juvenile court terminating Elizabeth's parental rights to Lizabella and remand the cause for further proceedings.

## VI. CONCLUSION

Based upon our de novo review of the record, we reverse the juvenile court's order terminating Elizabeth's parental rights and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.