Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/24/2023 09:05 AM CST

- 547 -

**Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports**
IN RE INTEREST OF DENZEL D.
Cite as 31 Neb. App. 547

In re Interest of Denzel D., Jr.,
a child under 18 years of age.
State of Nebraska, appellee, v.
Denzel D., Sr., appellant.

___N.W.2d___

Filed January 24, 2023.    No. A-22-312.

1. **Juvenile Courts: Appeal and Error.** Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings.
2. **Parental Rights: Proof.** In order to terminate parental rights, a court must find by clear and convincing evidence that one of the statutory grounds enumerated in Neb. Rev. Stat. § 43-292 (Reissue 2016) exists and that the termination is in the child's best interests.
3. ____: ____. It is the State's burden by clear and convincing evidence to show that there not only exists a statutory basis for termination of parental rights but that termination is in the best interests of the child.
4. **Parental Rights.** Whereas statutory grounds for termination of parental rights are based on a parent's past conduct, the best interests inquiry focuses on the future well-being of the child.
5. **Due Process: Parental Rights: Proof.** The Due Process Clause of the U.S. Constitution would be offended if a state were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness.
6. **Parental Rights: Statutes: Words and Phrases.** The term "unfitness" derives from the fault and neglect subsections of Neb. Rev. Stat. § 43-292 (Reissue 2016) and from an assessment of the child's best interests. In this context, parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing that has caused, or probably will result in, detriment to a child's well-being.
7. **Parental Rights.** Although incarceration alone cannot be the sole basis for terminating parental rights, it is a factor to be considered.

- 548 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE INTEREST OF DENZEL D.
Cite as 31 Neb. App. 547

8. **Juvenile Courts: Child Custody: Guardians and Conservators.** When a juvenile court awards custody of a minor to the Department of Health and Human Services, the court has the authority to award custody to a family that the department has designated as suitable guardians.

9. \_\_\_\_: \_\_\_\_: \_\_\_\_. Legal guardianship is contemplated as a long-term permanency objective for the juvenile in connection with a relative or kinship home, or with an individual other than the Department of Health and Human Services.

Appeal from the County Court for Hall County: Alfred E. Corey III, Judge. Reversed in part and in part vacated, and cause remanded for further proceedings.

Sonya K. Poland, of Poland Law Office, for appellant.

Christopher J. Harroun, Deputy Hall County Attorney, for appellee.

Moore, Riedmann, and Bishop, Judges.

Riedmann, Judge.

### INTRODUCTION

Denzel D., Sr. (Denzel Sr.), appeals the order of the county court for Hall County, sitting as a juvenile court, which terminated his parental rights to his minor child and declined to impose a guardianship for the child. For the reasons that follow, we reverse the order terminating Denzel Sr.'s parental rights and vacate that portion of the order denying his request for a guardianship. We remand the cause for further proceedings.

### BACKGROUND

Denzel Sr. is the father of Denzel D., Jr. (Denzel Jr.), born in February 2018. In February 2020, the State filed a petition alleging that Denzel Jr. was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). The State filed several amended petitions related to Denzel Jr. and his two siblings, their mother, Denzel Sr., and the father of one

- 549 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE INTEREST OF DENZEL D.
Cite as 31 Neb. App. 547

of the other children. Ultimately, Denzel Sr. and the children's mother entered admissions to certain allegations at the adjudication hearing, and Denzel Jr. was adjudicated under § 43-247(3)(a).

In September 2021, the State and the guardian ad litem filed a joint motion to terminate Denzel Sr.'s parental rights to Denzel Jr. The motion alleged that termination was appropriate under Neb. Rev. Stat. § 43-292(2), (4), (6), and (7) (Reissue 2016). The State also sought to terminate the parental rights of Denzel Jr.'s mother to all three of the children and the parental rights of the father of one of the other children, and the majority of the evidence presented at the termination hearing related to them. Because they are not at issue in this appeal, we summarize the evidence only as it relates to Denzel Sr. and is necessary to resolve the issues raised on appeal.

The termination hearing was held in March 2022. The evidence established that Denzel Jr. was born in February 2018, and in May 2018, Denzel Sr. was arrested and placed in jail. It was not until February or March 2019 that Denzel Sr. discovered, through a DNA test, that Denzel Jr. was his son. In March 2019, Denzel Sr. was sentenced to 8 to 12 years' incarceration. He is eligible for parole in November 2023, but his discharge date is not until January 2026. Thus, he was incarcerated from the time of his arrest and remained so through the termination trial.

For the majority of the case, the correctional facility where Denzel Sr. was housed did not allow inmates to have in-person visits because of the COVID-19 pandemic, so Denzel Sr. made weekly phone calls to Denzel Jr.'s foster home to speak with him. According to the foster mother, the phone calls always went well. Denzel Sr. expressed to the Nebraska Department of Health and Human Services (DHHS) caseworker a desire to know his son and be involved in his life, be able to talk with him, and watch him grow up.

Denzel Sr.'s case plan goals throughout the case were to follow the directives of the correctional facility, have phone

- 550 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE INTEREST OF DENZEL D.
Cite as 31 Neb. App. 547

calls with Denzel Jr. when he was able, maintain communication with his caseworker, and participate in any programming available to him. According to the caseworker, he met all of his goals.

When the children were removed from their mother's care, they were placed in foster care with a cousin of their mother, and the initial permanency goal for Denzel Jr. was reunification with his mother. During the case, Denzel Sr. expressed to the caseworker a desire to have Denzel Jr. placed with Denzel Sr.'s mother, Gabrielle H. (Gabby). Gabby resides in Chicago, Illinois, but she was actively involved in the case, having weekly virtual visits with Denzel Jr., and, for a period of time, the visits also included Denzel Jr.'s siblings. When Gabby traveled to Nebraska to attend court hearings for the case, she was able to have in-person visits with Denzel Jr. as well. According to the visitation supervisor, the visits went very well. Gabby also expressed a strong desire to have Denzel Jr. placed with her, but DHHS declined to do so initially because it was still working toward reunification with Denzel Jr.'s mother, who resided in Nebraska. Gabby informed the caseworker that if the permanency goal was changed to guardianship, she would like to have him placed with her and indicated that she was also willing to take in Denzel Jr.'s siblings. Denzel Sr. has an extended, close family who lives in Chicago, including his siblings, cousins, aunts, uncles, nieces, and nephews.

In May 2021, DHHS recommended changing Denzel Jr.'s primary permanency goal to guardianship with Gabby. After considering the amount of time that Denzel Jr. had been out of home, as well as the incarceration period for Denzel Sr., DHHS determined that would be an appropriate goal. In order to establish guardianship with a relative as a primary permanency goal, an Interstate Compact for the Placement of Children (ICPC) needed to be completed, and that, along with a home study, was conducted with Gabby, who then was approved for placement of Denzel Jr. Thereafter, the

- 551 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE INTEREST OF DENZEL D.
Cite as 31 Neb. App. 547

caseworker provided Gabby with Denzel Jr.'s birth certificate and medical records so she could look into schools for him to attend should he be placed with her. Although Denzel Jr. remained in his foster home at the time of the termination hearing, the caseworker testified that placing Denzel Jr. with Gabby was "still something [DHHS was] actively looking into."

After the conclusion of the termination hearing, the juvenile court entered an order terminating Denzel Sr.'s parental rights to Denzel Jr. The court specifically found that Denzel Sr. met the requirements of his case plan in that his goal was to safely parent and protect his son and his strategies were to follow the requirements of the correctional facility, to participate in programming there, and to have phone calls with his son and the caseworker. Nevertheless, the court determined that clear and convincing evidence supported termination under § 43-292(2) and (7). With respect to § 43-292(2), the court concluded that Denzel Sr. neglected Denzel Jr. because his own actions caused him to be incarcerated and unable to meet his child's basic needs. And it determined that § 43-292(7) was satisfied because, at the time of the termination hearing, Denzel Jr. had been in an out-of-home placement for 25 months.

The juvenile court also observed that Denzel Sr. has never had the opportunity to parent his child due to incarceration and that although he may be released in 2023, he also could remain in prison until 2026. According to the court, a guardianship is intended to be for a temporary placement to allow a parent to address any outstanding issues, and although the court acknowledged that Denzel Jr. maintained regular contact with Gabby and the ICPC was approved, it determined that Denzel Jr. should not be required to languish in the court system indefinitely and therefore denied the request for guardianship while finding that clear and convincing evidence established that termination was in Denzel Jr.'s best interests. Denzel Sr. timely appeals.

- 552 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE INTEREST OF DENZEL D.
Cite as 31 Neb. App. 547

## ASSIGNMENTS OF ERROR

Denzel Sr. assigns that the juvenile court erred in (1) terminating his parental rights and finding that termination was in the child's best interests and (2) denying his request for a guardianship.

## STANDARD OF REVIEW

[1] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Taeson D.*, 305 Neb. 279, 939 N.W.2d 832 (2020).

## ANALYSIS

*Termination of Parental Rights.*

Denzel Sr. assigns that the juvenile court erred in terminating his parental rights to Denzel Jr. He focuses his argument on whether the State proved by clear and convincing evidence that termination was in the child's best interests based on evidence beyond his incarceration. Upon our de novo review of the record, we find that the State failed to meet its burden of proving that Denzel Jr.'s best interests require terminating Denzel Sr.'s parental rights.

[2] In order to terminate parental rights, a court must find by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that the termination is in the child's best interests. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016). In the instant case, the juvenile court found that the evidence was sufficient to terminate Denzel Sr.'s parental rights pursuant to § 43-292(2) and (7).

Under § 43-292(7), the State must prove that the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. Here, Denzel Jr. was removed from his mother's care and placed in foster care in February 2020, and he remained placed outside the home throughout the duration of the case. The State filed the motion to terminate

- 553 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE INTEREST OF DENZEL D.
Cite as 31 Neb. App. 547

Denzel Sr.'s parental rights in September 2021. Thus, at that time, Denzel Jr. had been in an out-of-home placement for 19 months. The State therefore presented clear and convincing evidence to satisfy § 43-292(7).

Section 43-292 requires that the State prove only one of the enumerated statutory grounds for termination of parental rights. See *In re Interest of Isabel P. et al., supra*. Because we conclude that there is sufficient evidence proving that Denzel Jr. has been in an out-of-home placement for 15 or more months of the most recent 22 months, we need not address whether the evidence was sufficient to support termination under § 43-292(2).

[3-5] Under § 43-292, it is the State's burden by clear and convincing evidence to show that there not only exists a statutory basis for termination of parental rights but that termination is in the best interests of the child. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). Whereas statutory grounds are based on a parent's past conduct, the best interests inquiry focuses on the future well-being of the child. *Id*. This second hurdle is a high one for the State, since a parent's right to raise his or her children is constitutionally protected. *Id*. As we have stated before, the Due Process Clause of the U.S. Constitution would be offended if a state were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness. *In re Interest of Mateo L. et al., supra.*

As such, we apply a rebuttable presumption that it is in the child's best interests to maintain a relationship with his or her parent. See *id*. That presumption can only be overcome by a showing that the parent either is unfit to perform the duties imposed by the relationship or has forfeited that right. *Id*.

[6] Although the term "unfitness" is not expressly stated in § 43-292, we have said that it derives from the fault and neglect subsections of § 43-292 and from an assessment of the child's best interests. See *In re Interest of Mateo L. et al., supra*. In this context, parental unfitness means a personal

- 554 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF DENZEL D.
Cite as 31 Neb. App. 547

deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing that has caused, or probably will result in, detriment to a child's well-being. *Id*. The best interests and parental unfitness analyses require separate, fact-intensive inquiries, but each examines essentially the same underlying facts. *Id*.

[7] Almost the entirety of the State's evidence related to best interests and unfitness focused on Denzel Sr.'s incarceration. Although incarceration alone cannot be the sole basis for terminating parental rights, it is a factor to be considered. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). And we have noted that although incarceration itself may be involuntary as far as a parent is concerned, the criminal conduct causing the incarceration is voluntary. *Id*. Thus, in a case involving termination of parental rights, it is proper to consider a parent's inability to perform his or her parental obligations because of incarceration. *Id*.

In *In re Interest of Lizabella R.*, 25 Neb. App. 421, 907 N.W.2d 745 (2018), this court reversed the termination of a mother's parental rights to her children, finding that the State failed to prove statutory grounds related to the younger child and failed to prove that termination was in the best interests of the older child. After the older child had been adjudicated, the mother was sentenced to 10 years in federal prison. We found that the evidence presented by the State with regard to best interests focused on the mother's inability to provide for her child while she was incarcerated. We noted the caseworker's opinion that based on the length of time the mother would be incarcerated and her resulting inability to provide stable placement, terminating her parental rights was in the children's best interests. We recognized, however, that the caseworker also conceded that the mother had been doing very well and had made progress toward rehabilitating herself as a parent prior to her incarceration. In finding that the State failed to prove that terminating the mother's parental rights

- 555 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE INTEREST OF DENZEL D.
Cite as 31 Neb. App. 547

was in the older child's best interests, we relied on the fact that the mother actively worked to improve her parenting skills and to maintain a relationship with her child.

The same is true in the present case. While incarcerated, Denzel Sr. completed three parenting courses, a class dealing with the victim impact of his offense, and classes through a community college to further his education. He also completed an intensive outpatient program that dealt with issues such as improving his chances of not reoffending, emotional intelligence, integrating back into society, and creating a better future for himself. At the time of the termination hearing, Denzel Sr. was housed at a work ethic camp and working toward a work-release program for which he could be eligible the following month. He explained that he was on the waiting list for a forklifting certification class and that if he was able to be transferred to the work-release center in Lincoln, Nebraska, there was a forklifting position available. He testified that he has followed all of the rules at the correctional facility and maintained employment while incarcerated, including cooking, cleaning, and assisting in the library.

Furthermore, Denzel Sr. kept in consistent contact with Denzel Jr. throughout the case. According to the caseworker, Denzel Sr. showed a desire to maintain a relationship with his son while being incarcerated and an interest in playing a role in his son's life and in keeping up to date with his development. He made weekly phone calls to speak with his son during the time the correctional facility would not allow in-person visits and maintained consistent contact with the caseworkers. During the only in-person visit he had with Denzel Jr., which occurred in November 2021, the foster mother reported that Denzel Sr. interacted very well with his son, provided for his needs, and read him a book.

The State argues that *In re Interest of Lizabella R., supra*, is distinguishable, because in that case, the mother proved that she could appropriately parent her child prior to her incarceration, whereas Denzel Sr. has never been in the position

- 556 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE INTEREST OF DENZEL D.
Cite as 31 Neb. App. 547

to parent his son. Although Denzel Sr. was aware of the birth of Denzel Jr. prior to going to prison, he did not learn that Denzel Jr. was his son until after he was already incarcerated. Therefore, he did not have the opportunity to play a parental role. Despite this, he has shown that he is willing and able to perform parenting duties. He and Denzel Jr.'s mother were in a relationship and cohabiting when she was pregnant with Denzel Jr.'s older sister, and she initially told Denzel Sr. that he was the father of that child. For approximately the first year of the child's life, Denzel Sr. performed everyday parenting tasks for her such as giving her baths, feeding her, doing her hair, singing to her, and taking care of her when she was sick. The foster mother testified similarly, describing Denzel Sr. as a good, attentive parent to Denzel Jr.'s sister and opining that he has parenting skills and knowledge of how to take care of a young child. Denzel Sr. testified that had he not been incarcerated, he would have participated in raising Denzel Jr.

We recognize and consider that it was Denzel Sr.'s own actions that caused him to be incarcerated. We also consider the fact that at that time, he was unaware that Denzel Jr. was his son, and since learning of that fact, he has demonstrated a commitment to his child to the best of his ability through consistent phone calls with the child and the caseworkers and seeking a guardianship with his mother in order to facilitate a familial relationship for Denzel Jr. He also participated in all services required of him and showed initiative through maintaining employment in the correctional facility, completing various classes and programming, and considering his future by seeking a forklifting certification and transfer to work release. Upon our review of these facts, we cannot find that terminating Denzel Sr.'s parental rights is in Denzel Jr.'s best interests, particularly considering that we also conclude, as explained below, that the juvenile court ruled prematurely in denying Denzel Sr.'s request for a guardianship for Denzel Jr.

- 557 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF DENZEL D.
Cite as 31 Neb. App. 547

with Gabby. We therefore reverse the juvenile court's order and remand the cause for further proceedings.

*Guardianship.*

Denzel Sr. also assigns that the juvenile court erred in denying his request for a guardianship. We agree. But before addressing the merits of this issue, we pause to consider the State's assertion that the issue of a guardianship was never properly presented to the juvenile court because no motion was filed under Neb. Rev. Stat. § 43-1312.01 (Reissue 2016).

The Nebraska Supreme Court has recognized that Nebraska law requires the creation of permanency plans for every juvenile placed in out-of-home care and requires the juvenile courts to hold a hearing on the plan. *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016). The court's order on a permanency plan must include whether the objective is for the juvenile to be returned to the parent, referred for a termination-of-parental-rights filing, placed for adoption, or referred for a guardianship. *Id*. If the permanency plan for a child who has been adjudicated under § 43-247(3)(a) does not recommend return of the child to his or her parent or that the child be placed for adoption, the juvenile court may place the child in a guardianship as long as certain statutory requirements have been met. See § 43-1312.01.

[8] Prior to 1998, county courts had exclusive jurisdiction over all guardianship matters. See *In re Interest of Mekhi S. et al.*, 309 Neb. 529, 960 N.W.2d 732 (2021). Thus, if the juvenile court ordered a permanency objective of legal guardianship for a juvenile who was then under the jurisdiction of the juvenile court, the pending juvenile proceedings were held in abeyance until guardianship proceedings could be filed and finalized in the county court, after which the juvenile court's jurisdiction ended. *Id*. Since that time, the relevant statute has been amended to grant juvenile courts concurrent original jurisdiction over guardianship proceedings, and when a minor is adjudged to be within the jurisdiction of the juvenile court,

- 558 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE INTEREST OF DENZEL D.
Cite as 31 Neb. App. 547

a guardianship appointment must be made pursuant to the juvenile code. See *id*. Therefore, when a juvenile court awards custody of a minor to DHHS, the court has the authority to award custody to a family that DHHS has designated as suitable guardians. See *In re Guardianship of Rebecca B. et al.*, 260 Neb. 922, 621 N.W.2d 289 (2000).

We do not read the foregoing as requiring that a specific motion for guardianship be made in order for a juvenile court to consider placing an adjudicated child in a guardianship. Rather, DHHS determines the permanency plans for children in its custody and presents the plans to the juvenile court for approval. If the permanency plan recommends a guardianship and DHHS has identified a potential guardian, then the issue has been presented to the juvenile court and the matter proceeds accordingly.

This procedure was initially followed in the present case. At the outset, the primary permanency goal for Denzel Jr. was reunification with his mother. As early as January 2021, an alternative goal of guardianship with Gabby was also recommended, but because she lives out of state, DHHS continued Denzel Jr.'s placement in his foster home and continued making reasonable efforts toward reunification with his mother. In May, however, DHHS recommended that the primary goal for Denzel Jr. be changed to guardianship, and the court approved the change. And every case plan and court report thereafter included guardianship with a relative as the primary permanency plan. DHHS took steps to facilitate the guardianship, including completing an ICPC and a home study. DHHS approved Gabby for placement of Denzel Jr., but the process stalled there. Accordingly, the permanency plan of guardianship for Denzel Jr. with Gabby was presented to the juvenile court throughout the case, but it erred in denying it at the conclusion of the hearing on the termination of Denzel Sr.'s parental rights.

To support its decision, the juvenile court opined that a guardianship is intended to be for a temporary placement to

- 559 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
IN RE INTEREST OF DENZEL D.
Cite as 31 Neb. App. 547

allow a parent to address any outstanding issues. The court therefore declined to impose a guardianship because Denzel Sr. has been incarcerated for most of Denzel Jr.'s life and because Denzel Jr. was just 4 years old at the time. To this end, the caseworker opined that Denzel Jr.'s best interests require permanency.

[9] But terminating a parent's rights is not a prerequisite to achieving permanency for an adjudicated child. Section 43-1312.01(3) specifically provides that notwithstanding the fact that the juvenile court retains jurisdiction over the child for modification or termination of the guardianship order, "the guardianship placement shall be considered permanent for the child." One commentator has noted that a

> legal guardianship is contemplated as a long-term permanency objective for the juvenile in connection with a relative or kinship home, or with an individual *other than* [DHHS]. . . . Furthermore, a legal guardianship established pursuant to [the procedures outlined in] § 43-1312.01 is statutorily recognized as a form of permanency for the juvenile.

Christine P. Costantakos, Juvenile Court Law and Practice § 6:5 at 456 (2022). A guardianship grants to the guardian such powers, rights, and duties with respect to the care, maintenance, and treatment of the child as the biological or adoptive parent would have, discontinues permanency reviews and case reviews, and relieves DHHS of its duties of supervising the placement of the child. See § 43-1312.01.

Here, in order to facilitate the guardianship, an ICPC and a home study were conducted with Gabby, and she was approved. She participated since the inception of the case by staying in contact with the caseworkers and having weekly visits with Denzel Jr., as well as his siblings for a period of time. The children's therapist opined that the three children should remain together, and Gabby was willing to take all three of them into her home. The visits between Gabby and Denzel Jr. went well, and they have a bond with each other.

- 560 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF DENZEL D.
Cite as 31 Neb. App. 547

Moreover, during the case, DHHS supported the establishment of a guardianship. The caseworker opined at the termination hearing that it was in Denzel Jr.'s best interests to be placed in a guardianship with Gabby. DHHS initially decided to change the permanency plan for Denzel Jr. to guardianship with a relative as the primary plan after considering the amount of time that Denzel Jr. had been out of the home, as well as the incarceration period for Denzel Sr. After the ICPC was approved, the caseworker provided Gabby with Denzel Jr.'s birth certificate and medical records so she could look into schools for him to attend should he be placed with her. At the time of the termination hearing, placing Denzel Jr. with Gabby was "still something [DHHS was] actively looking into."

The record indicates that DHHS supported placing Denzel Jr. in a guardianship with Gabby, she was willing and able to take in Denzel Jr. and his siblings in order to keep them together, and she could provide the permanency that Denzel Jr. needs while he could remain in a relative placement with his paternal grandmother. Based on the foregoing, we conclude that the juvenile court erred in denying the request for guardianship. We therefore vacate the court's order and remand the cause for further proceedings consistent with this opinion.

## CONCLUSION

Upon our de novo review of the record, we reverse the juvenile court's order terminating Denzel Sr.'s parental rights and vacate that portion of the order denying a guardianship with Gabby. Accordingly, we remand the cause for further proceedings.

REVERSED IN PART AND IN PART VACATED, AND
CAUSE REMANDED FOR FURTHER PROCEEDINGS.