IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF BRIELLE T. & ADDISON T.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF BRIELLE T. AND ADDISON T.,
CHILDREN UNDER 18 YEARS OF AGE.


STATE OF NEBRASKA, APPELLEE,

V.

JUSTIN T., APPELLANT.


Filed November 19, 2019.    Nos. A-19-218, A-19-219.


Appeals from the County Court for Polk County: STEPHEN R.W. TWISS, Judge. Affirmed.

Erik C. Klutman, of Sipple, Hansen, Emerson, Schumacher, Klutman & Valorz, for appellant.

Marcia J. Scott, Deputy Polk County Attorney, for appellee.


PIRTLE, RIEDMANN, and WELCH, Judges.

WELCH, Judge.

INTRODUCTION

Justin T., natural father of Brielle T. and Addison T., appeals the order of the Polk County Court, sitting in its capacity as a juvenile court, terminating his parental rights pursuant to Neb. Rev. Stat. § 43-292(7) (Reissue 2016) and finding that termination was in the minor children's best interests. Based upon the analysis set forth herein, we affirm.

STATEMENT OF FACTS

On August 18, 2016, the State filed juvenile petitions alleging that Brielle, born October 2013, and Addison, born October 2012, were children within the meaning of Neb. Rev. Stat.

§ 43-247(3)(a) (Reissue 2016). Specifically, the petitions alleged that the children were juveniles who lacked proper parental care by reason of the fault or habits of their parents; whose parents neglected or refused to provide proper or necessary subsistence, education or other care necessary for the health, morals or well-being of such juveniles; whose parents was unable to provide or neglected or refused to provide special care made necessary by the mental condition of the juvenile, or who was in a situation dangerous to life or limb or injurious to the health or morals of such juveniles. Also on August 18, 2016, the State filed motions for temporary custody of the minor children, which were granted by the court on August 19. The children had been removed from their parents' care by law enforcement on August 17.

In connection with the petitions and motions, the State filed an affidavit which recited that Brielle's and Addison's parents did not live together but the children resided with each parent from time to time without a custody order. The affidavit alleged that the Nebraska Department of Health and Human Services (DHHS) received an intake which alleged that the children's mother was using methamphetamine and fighting with her boyfriend in front of the children and that later tests revealed the presence of methamphetamine in her system at various times. The affidavit further alleged that during a DHHS worker's visit with the children's mother, the mother expressed concerns that the children may be exhibiting evidence of sexual assault. A physician, after examining the children, recommended that the children not be returned to Justin's home.

In November 2016, the children were adjudicated pursuant to § 43-247(3)(a). In connection with the adjudication, Justin admitted to the allegations in the State's petition except for the allegations of possible sexual assault. The children's mother is not involved in this appeal and will be discussed only as necessary to the circumstances of the present juvenile court case. Following the adjudication, the court entered a dispositional order on December 8, finding that DHHS' December case plan was reasonably material to the rehabilitation objective of eliminating the situation or condition for which the adjudication was obtained and adopted the report thereby requiring the parties to comply with its requirements.

In March 2018, the State filed motions to terminate Justin's parental rights alleging, among other allegations, that pursuant to § 43-292(7), the children had been out of Justin's home for 15 or more of the most recent 22 months and termination was in the minor children's best interests. The termination hearing was held in October. Witnesses at the termination hearing included Justin; Linda Prusa, a family partner for Owens & Associates; Mystique Lauer, a DHHS family services specialist; Shelby Dickes, a DHHS child and family services specialist; Stacey Viergutz, a supervisor employed by Owens Educational Services; and Tiffany Ramirez, the children's foster mother.

Exhibits received into evidence included Justin's psychological evaluation, family support notes, and two case plans. Justin's psychological evaluation established he has attention deficit hyperactivity disorder (ADHD), posttraumatic stress disorder, adjustment disorder with anxiety, and borderline intellectual functioning--rule out intellectual disability, mild. The recommendations from Justin's psychological evaluation included continued use of ADHD medication, which Justin had stopped taking, and continued outpatient counseling. The psychologist noted that to confirm the diagnosis of intellectual disability, someone who knew Justin very well and saw his daily functioning would need to complete an adaptive functioning assessment for Justin. The psychological evaluation also referenced DHHS reports which indicated Justin was inconsistent in

attending appointments and that, under those conditions, treatment would be unable to adequately assist him.

The November 2017 and August 2018 case plans were received as exhibits. Both case plans outlined efforts or goals concerning drug testing, therapy, and family support services. The progress report notes in both exhibits provided that Justin had missed multiple drug tests and in February 2018, Justin was discharged from drug testing due to lack of involvement.

JUSTIN

Justin testified that in 2017, he lived with his mother, who he described as being very controlling and manipulative. He stated that his mother was designated as payee of his disability checks, that she interfered with his ability to follow through with certain components of the court-ordered DHHS rehabilitation plan, that she got into conflicts with caseworkers assigned to this case, and that she harmed his relationship with his children. He explained his mother provided him with a phone under her phone service plan, but placed limitations on his phone including shutting off phone data so he could not use the Internet or any apps rendering the phone functional only for telephone calls. He elaborated that in order to receive telephone calls, he had to be connected to Wi-Fi, which made it difficult to communicate with caseworkers and to find out information regarding drug testing. Justin further testified that he placed a secret texting app on his phone without his mother's knowledge in order to be able to text people including caseworkers. Justin explained that because his mother prevented his access to his birth certificate and social security card, he had to go to a family support worker and bring a person with him to retrieve those documents.

Justin testified that he has had supervised visits since the removal of his children from his residence; however, he did not have any visits from May to September 2017 after the caseworker canceled those visits due to communication issues. He explained that from the time he moved out of his mother's home in July 2018 to the time of the termination hearing in October, he had supervised visits with his children twice a week. He testified that he requested unsupervised visits but his request was denied because it was made after the State filed the motions to terminate his parental rights. Justin also testified he was offered additional visits but that was "too much" for him at the time. Justin testified he provided meals for the children during visits and played with them. Justin explained he enjoyed his visits with the children and participated in activities such as basketball, puzzles, playing on the jungle gym, and watching shows or movies. Justin stated the children call him daddy, are happy to see him, and give him hugs and kisses.

Justin testified he has met the goals set in October 2017, which included moving away from his mother and obtaining his own phone and residence. He testified he meets with family support and works on parenting skills like discipline and meal planning. Justin testified he can care for his children because he is away from his mother, loves his children, and was willing to accept additional services.

LINDA PRUSA

Prusa testified that she had supervised Justin's visits since March 2018. According to Prusa, Justin was attentive to the children about 40 percent of the time, but the remainder of the time he was on his phone or cleaning his truck. Additionally, Prusa testified that she made suggestions

about safety concerns three to four times per visit. Examples of safety issues included that Justin took the children to a hot tub and overexposed them to the heat due to the high temperature outside and the high temperature of the water which caused one of the children to become overheated; that the children ran ahead of Justin in a parking lot leading Prusa to suggest that the children hold on to Justin's hands; and that one of the children used a sharp knife, causing Justin's father to intervene telling the child that she needed to use a butter knife. In Prusa's opinion, Justin's visits still need to be supervised due to safety issues. She further explained Justin lacked follow through with discipline and had issues with communication and consistency during visits.

### MYSTIQUE LAUER

Lauer testified that she was the case manager for this case from July 2016 to August 2017. She testified she tried complying with the policy requirements of seeing Justin face-to-face on a monthly basis; however, despite calling and texting Justin weekly, she stated he mostly did not respond. According to Lauer, for a period of time during the spring of 2017, Justin did not see the children due to his lack of communication, but the visits resumed by March or April 2017. However, visits were suspended again from about May to August.

Lauer further testified the December 2016 case plan and court report indicated that Justin only completed 1 of the 25 attempted drug tests. Drug testing services stopped because of Justin's lack of participation, then resumed again in 2017. Justin's failure to participate resulted in the discontinuation of drug testing services. Lauer also testified that Justin cancelled five scheduled support sessions from August 1 to September 20, 2018.

### SHELBY DICKES

Dickes testified that during her initial meetings with Justin, he discussed wanting to move out of his mother's home but was concerned he would be unable to do so. Dickes encouraged Justin to meet with a victim advocate for assistance and gave him the victim advocate's contact information. However, Justin failed to follow through and did not meet with the victim advocate. Dickes also testified Justin did not consistently participate in family support services or drug testing and canceled an excessive number of visits. Justin's family support services were canceled in the fall of 2017 due to his lack of participation. Justin failed to consistently communicate with Dickes and often did not respond to texts or phone messages. Dickes also testified that Justin had visits twice a week, but that he was unable to meet for all of those visits. Dickes testified she still had concerns about Justin's lack of communication.

A few months before the trial, Dickes suggested increasing the number of Justin's visitation hours; however, Justin, who was only getting 10 hours per week in visitation, wanted his hours decreased. In Dickes' opinion, Justin has not progressed during the past 2 years despite having multiple opportunities and services that could have helped him learn parenting skills, and she believed continuing additional services would not be beneficial.

Dickes testified she first met Brielle when she was 4 years old, and that it was hard to speak with her because she could only say two words at a time. Now Brielle can carry on conversations, and Dickes can understand most of her words. Dickes opined that terminating Justin's parental rights was in the children's best interests.

## STACEY VIERGUTZ

Viergutz testified regarding visitation scheduling from the summer of 2018 to the date of the termination hearing. Viergutz stated that she suggested increasing Justin's visitation time to more than 10 hours, but Justin responded he did not have enough time. Instead, Justin requested less visitation time.

## TIFFANY RAMIREZ

Ramirez testified that the children have lived with her since November 16, 2016. She has observed improvement in the children's behaviors, such as asking politely for things they want instead of throwing a tantrum. Ramirez testified she has established rules at her home which the children abide by when they are there including a consistent bedtime. Ramirez also testified that although Justin has her phone number and can call her to speak with the children, he never has.

## COURT ORDER

In its January 2019 order, the court found the statutory grounds for termination under § 43-292(7) were met because both children were removed on August 17, 2016, and remained out of the home through the time of trial. The court also determined that Justin was an unfit parent and termination was in the best interests of the children. Specifically, the court observed that even though the same goals and strategies had been in effect for most of this case, Justin had not shown consistent progress with the majority of the strategies of the case plans.

Among other findings, the court noted that although Justin had moved out of his mother's home and recently obtained housing with his girlfriend, he required financial assistance for more than half of the first month's rent and security deposit. The court also noted that Justin failed to maintain consistent contact and communication with caseworkers, failed to regularly attend family team and caseworker meetings, was dismissed from family support services due to lack of participation, failed to obtain a psychological evaluation and enroll in parenting classes, failed to complete drug testing, was inconsistent in attending visitation, and had cancelled an excessive number of visits. Further, even after Justin moved out of his mother's home, communication issues with caseworkers were still present, he declined an increase in visitation hours because he was too busy and, in fact, Justin's visitation hours were reduced at his request. The court noted that since moving out of his mother's home in July 2018, Justin canceled six visits and did not show for two visits. Additionally, the court relied on the family support notes which showed Justin canceled five support sessions, did not appear for five additional sessions beginning July 11, 2018, and Justin's expression that he had inadequate time for anything else in his life and never saw his friends. The court ultimately concluded Justin "has not complied with the court orders and his lack of progress and failure to participate in services shows that he does not intend to comply."

## ASSIGNMENTS OF ERROR

Justin's assignments or error, restated, are that the juvenile court erred in finding that (1) the State proved by clear and convincing evidence that terminating his parental rights was in the best interests of the children, (2) he was an unfit parent, (3) he had not made reasonable efforts to comply with the court-ordered plan of rehabilitation, and (4) in failing to find that he had rehabilitated himself to the minimum level of fitness.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016); *In re Interest of Becka P.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). When the evidence is in conflict, however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *Id.*

ANALYSIS

STATUTORY BASIS FOR TERMINATION

Although Justin does not contest the court's determination that the State proved by clear and convincing evidence that the statutory requirement in § 43-292(7) was met, for the sake of completeness on our de novo review, we briefly address this statutory ground.

In Nebraska statutes, the bases for termination of parental rights are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Elizabeth S.*, 282 Neb. 1015, 809 N.W.2d 495 (2012).

In its order terminating Justin's parental rights to the children, the court found that one statutory ground existed pursuant to § 43-292(7) (child out-of-home for 15 or more months of most recent 22 months). The children were in an out-of-home placement continuously from August 17, 2016, until the date of the termination hearing held on October 22, 2018. At the time the motion to terminate Justin's parental rights was filed on March 26, the children had been in an out-of-home placement for approximately 19 months. As of the date of the termination hearing on October 22, the children had been in an out-of-home placement for approximately 26 months. Our de novo review of the record clearly and convincingly shows that grounds for termination of Justin's parental rights under § 43-292(7) were proven by sufficient evidence.

BEST INTERESTS

Justin contends that the juvenile court erred in finding that the State proved by clear and convincing evidence that terminating his parental rights was in the best interests of the children, in finding that he was an unfit parent, in finding that he had not made reasonable efforts to comply with the court-ordered plan of rehabilitation, and in failing to find that he had rehabilitated himself to the minimum level of fitness. Although Justin makes these four assignments, his argument is limited to his contention that the court erred in finding that he had not made reasonable efforts to comply with the court ordered plain of rehabilitation.

We note that even though failure to rehabilitate is a separate statutory ground found at § 43-292(6) and can serve as the basis for termination, as we stated in the previous section of this opinion, the court found that the statutory requirements in § 43-292(7) were met and the court need only find one statutory ground applicable when coupled with evidence that termination is in the best interests of the child or children. See *In re Interest of Elizabeth S.*, *supra*. Accordingly, we interpret Justin's argument as a part of his claim that the court erred in finding that termination was in the children's best interests and we analyze that argument below in the context of our best interests analysis.

In *In re Interest of Becka P.*, 27 Neb. App. 489, 508-09, 933 N.W.2d 873, 887-88 (2019), this court recently stated:

In addition to proving a statutory ground, the State must show that termination of parental rights is in the best interests of the child. See *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit. *Id*. There is a rebuttable presumption that the best interests of the child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id*. In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id*.

The best interests analysis and the parental fitness analysis are fact-intensive inquiries. And while both are separate inquiries, each examines essentially the same underlying facts. *Id*. In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015).

In cases where termination of parental rights is based on § 43-292(7), the Nebraska Supreme Court has held that appellate courts must be particularly diligent in their de novo review of whether termination of parental rights is in fact in the child's best interests. See *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005).

The term "unfitness" is not expressly used in § 43-292, but the concept is generally encompassed by the fault and neglect subsections of the statute, and is also through a determination of the child's best interests. *In re Interest of Nicole M.*, 287 Neb. 685, 704, 844 N.W.2d 65, 80 (2014). Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's wellbeing. *Id.*

In his brief, Justin admits that the case plan included several areas where he needed to make progress including: "urinalysis testing, responding to calls for communication, addressing mental health, working with family support, achieving housing outside of his mother's [home], setting up a phone in his own name, and working with family support for age appropriate skills[,]" as well as continuing visitations with his children. Brief for appellant at 19. Justin testified he has met several goals including moving away from his mother and obtaining his own phone and residence. Justin argues he completed a psychological evaluation, which was received into evidence and that he can care for his children because he is now away from his mother, loves his children, and is willing to accept additional services.

However, based upon our de novo review of the record, it is apparent that Justin has not made consistent progress with most of the goals and strategies in the case plan, such as participating in drug testing, attending family support meetings, communicating with service

providers, and maintaining consistent visitation. Regarding drug testing, as of December 2016, Justin had only completed 1 of the 25 attempted drug tests. Further, drug testing services were eventually discontinued due to Justin's lack of participation.

The record also reflects Justin failed to adhere to the case plan regarding family support meetings and communication with various service providers. Lauer testified she tried complying with the policy requirements of seeing Justin face-to-face on a monthly basis; however, despite calling and texting Justin weekly, he mostly did not respond. Lauer testified that for a period of time during the spring of 2017, Justin did not see the children due to his lack of communication and although visits resumed in March or April, the visits were suspended again from May to August. Justin did not consistently participate in family support services, canceled an excessive number of visits, and his lack of participation led to the cancellation of his family support services in the fall of 2017.

The evidence also established that Justin was inconsistent in participating in supervised visits. Justin stated his mother hindered his ability to communicate with caseworkers, which negatively impacted his relationship with the children. Justin believed moving away from his mother would make it possible to develop a better relationship with his children. However, the record refutes this assertion. Prior to the trial, both Dickes and Viergutz had discussions with Justin about increasing his visitation hours; however, Justin, who was only getting 10 hours per week in visitation, wanted his hours decreased saying he did not have enough time. Additionally, Prusa expressed concerns about the safety of the children during Justin's supervised visits and opined that Justin's visits needed to remain supervised due to safety issues.

Pursuant to our de novo review of the record, we acknowledge that there appears to be a parental bond between Justin and his children; however, a parental bond alone does not make the parent a fit person to provide parental care for their child. See *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016). Here, Justin admitted to the State's original allegations in connection with the adjudication that he neglected or refused to provide proper or necessary subsistence, education or other care necessary for the health, morals or well-being of his children; and he was unable to provide or neglects or refuses to provide special care made necessary by the mental condition of the juvenile, or who was in a situation dangerous to life or limb or injurious to the health or morals of his children. Additionally, since that time, Justin has failed to follow the case plan in order to put himself in a position to parent his children on a full-time basis. Safety concerns existed throughout the pendency of this case; Justin's visits remained supervised due to safety concerns; he did not give his full attention to the children during visits; he has failed to communicate with service providers; he has cancelled visits and stated that he did not want to increase his visits because he needed time for himself. Justin's psychological issues have also hindered his attempts to put himself in a position to parent his children.

The record also provides clear and convincing evidence of Justin's personal deficiencies which have prevented the performance of a reasonable parental obligation in child rearing for his children which has caused, or probably will result in detriment to his children's wellbeing, notwithstanding his relationship with them. Justin chose not only to disregard the case plan but appeared indifferent in doing so. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Becka P.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). Children cannot, and

should not, be suspended in foster care or be made to await uncertain parental maturity. *Id*. Justin has failed to place himself in a position to parent his children despite the children being in out-of-home placement since July 2016.

In sum, based upon our de novo review of the record, the evidence adduced by the State clearly and convincingly established that Justin failed to comply with his rehabilitation plan. The district court did not err in finding that he had not made reasonable efforts to comply with the court-ordered plan of rehabilitation or in failing to find that he had rehabilitated himself to the minimum level of fitness. Further, the juvenile court did not err in determining that Justin was an unfit parent and that terminating his parental rights was in the children's best interests.

CONCLUSION

For the reasons stated above, we affirm the court's order terminating Justin's parental rights to Brielle and Addison.

AFFIRMED.